MARY DOWD, as Administratrix of MICHAEL DOWD, Deceased, Respondent, *v.* THE NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

1. NEGLIGENCE — INSUFFICIENCY OF RAILROAD COMPANY'S RULES TO GUARD AGAINST ACCIDENTS RESULTING FROM THE PRACTICE OF "KICK-ING" CARS. The evidence in an action against a railway company for alleged negligence in causing the death of a car repairer in its employ, which was the result of "kicking" cars from the main track onto a sid- ing where he was engaged at work in such a position that he could not see the approaching danger, examined and held sufficient to warrant the jury in finding that defendant's rules were insufficient to guard against the accident.

2. MASTER AND SERVANT — ASSUMPTION OF RISK OF EMPLOYMENT — CONTRIBUTORY NEGLIGENCE — BURDEN OF PROOF. The doctrine that a servant who enters upon, or with no prospect of a change of method, continues in his employment with knowledge of the risks incident thereto, assumes them and waives any right of action against the master on account thereof, rests upon implied contract and is distinct in principle from the doctrine of contributory negligence; contributory negligence prevents a recovery because the plaintiff of his own volition intervenes between the negligence of the defendant and the injury received, so that the former is not the sole cause of the latter, the doctrine resting not upon contract, but on the inherent nature of negligence; intervention, in order to break the causal connection between the negligent act and the injury, must come in between them; the assump- tion of the risk does not come in between them, but is in advance of both. The burden, therefore, of establishing, in an action against the master for negligence, the waiver implied by the assumption of the risk rests upon the defendant; the waiver is not a form of contributory negligence, the absence of which must be affirmatively proved in order to make out the plaintiff's case, and the fact that he fails to establish affirmatively that he had no knowledge of the risk and, therefore, did not waive it, does

not prevent the jury from finding that he was not chargeable with knowledge thereof, in the absence of evidence conclusively establishing such knowledge.

*Dowd* v. *N. Y., O. & W. Ry. Co.*, 61 App. Div. 612, affirmed.

(Argued March 4, 1902; decided April 8, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 8, 1901, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

This action was brought to recover damages sustained by the plaintiff through the death of her intestate caused, as alleged, by the negligence of the defendant. The answer, after a specific denial of all the allegations of negligence on the part of the defendant, alleged that the death of the decedent was caused by his own negligence and that of his fellow-servants.

At the village of Sidney, in this state, the defendant's railway intersects that of the Delaware & Hudson. There is so much traffic between the two roads at this point, that the defendant maintains a yard in order to provide for the storage of cars and the handling of trains. The yard consists of several side tracks connected by switches with the main line, and constructed upon a grade descending gradually toward the north for convenience in moving cars by gravitation.

Some freight and many coal cars were usually stored upon the sidings, and if any needed such slight repairs as could be conveniently made away from the shop, it was the duty of the car repairers to attend to them while they thus stood in the yard. For the protection of the repairers while thus engaged, it was provided by a rule known as number 38, that " A blue flag by day and a blue light by night, placed on the end of the car, denotes that car inspectors are at work under or by the car or train. The car or train thus protected must not be coupled to or moved until the blue signal is removed by the car inspectors."

There were other rules of which the following were read in evidence upon the trial: "Rule No. 25. Red signifies danger and is a signal to stop." "Rule No. 5. The fact that any person enters, or remains in, the service of the company, will be considered as an assurance of willingness to obey its rules. No one will be excused for the violation of any of them, even though not included in those applicable to his department."

For eight or nine years prior to the accident which gave rise to this action, the custom prevailed in the defendant's yard of "kicking" cars, or trains of cars, from the main branch onto the sidings. This custom was general and there was another, but less general, to kick trains in on sidings where car repairers were at work, even when the blue signal was up. Cars were kicked by backing them rapidly from the main track onto the siding, suddenly detaching the engine and leaving them to run on the descending grade by gravitation and their own momentum.

On the 31st of August, 1892, the plaintiff's intestate had been in the employ of the defendant as a car repairer for about six weeks, but not continuously. On that day, shortly after noon, he was at work under a car situated near the middle of a train consisting of twenty-five empty coal cars standing without an engine on siding No. 3. A blue as well as a red flag was flying at the rear or southerly end of the train. A milk train consisting of an engine, express car, passenger car and three or four milk cars came in at this time and stopped at the station to transact its usual business. It was a little late and after discharging the passengers and freight, the engineer ran south past the switch and then, as was his custom, backed rapidly, severed his engine and kicked the train upon siding No. 3. Of the three trainmen belonging to this train but one remained thereon to manage the brakes and he was unable to control its movement. After some delay, he succeeded in setting the hand brake and then struggled with an air brake, but without success. The result was that the milk train ran down the grade without control, until, colliding with the empty cars, it shoved them forward

about two car lengths and caused one of them to run over the plaintiff's intestate as he was working under it, and injured him so severely that he died within a few days.

Upon the trial the jury was instructed to find whether the defendant furnished to the decedent a reasonably safe place to work; whether its rules were sufficient under the circumstances, or whether it was its duty to make further regulations for the safety of the repairers; and finally whether the decedent knew or ought to have known of the danger of repairing a car under the circumstances which surrounded him when he was injured.

The jury found for the plaintiff, and after affirmance by the Appellate Division one of the justices dissenting, the defendant came to this court.

*Udelle Bartlett* and *P. W. Cullinan* for appellant. The record shows that all the questions submitted to the jury are properly raised for review. (*Byrnes* v. *N. Y., E. & W. R. R. Co.,* 113 N. Y. 251.) All the questions in this case are questions of law, and are reviewable in this court. (Const. N. Y. art. 6, § 9; *Ostrom* v. *Greene,* 161 N. Y. 353; *Cox* v. *Stokes,* 156 N. Y. 491; *Baulec* v. *N. Y. & H. R. R. Co.,* 59 N. Y. 356; *Laidlaw* v. *Sage,* 158 N. Y. 73; *Hannigan* v. *L. & H. R. R. R. Co.,* 157 N. Y. 244; *Hudson* v. *R., W. & O. R. R. Co.,* 145 N. Y. 408; *People ex rel.* v. *Martin,* 142 N. Y. 352; *Hemmens* v. *Nelson,* 138 N. Y. 517; *Linkauf* v. *Lombard,* 137 N. Y. 417; *Burke* v. *Witherbee,* 98 N. Y. 562.) The question as to whether defendant furnished plaintiff's intestate a reasonably safe place in which to work, should not have been submitted to the jury, but a nonsuit should have been granted because decedent assumed the risk of the dangers complained of. (*Cameron* v. *N. Y. C. & H. R. R. R. Co.,* 145 N. Y. 400; *Shaw* v. *Sheldon,* 103 N. Y. 667; *Gibson* v. *Erie Ry. Co.,* 63 N. Y. 449; *Crown* v. *Orr,* 140 N. Y. 450; *Sweeney* v. *B. & J. E. Co.,* 101 N. Y. 520; *Powers* v. *N. Y., L. E. & W. R. R. Co.,* 98 N. Y. 274; *Hickey* v. *Taafe,* 105 N. Y. 36; *Anthony* v. *Leeret,* 105 N. Y. 600; *Murray* v.

*N. Y. C. & H. R. R. R. Co.*, 55 App. Div. 344; *Fitz-gerald* v. *N. Y. C. R. R. Co.*, 59 Hun, 225.) A nonsuit should have been granted because the plaintiff failed to show that intestate was free from contributory negligence, but, on the contrary, the evidence establishes beyond any question that if the yard where intestate was injured was a dangerous place the dangers were obvious and apparent and assumed by decedent, and by assuming the risks, as a matter of law, he became guilty of contributory negligence. (*Cahill* v. *Hilton*, 106 N. Y. 512; *Shields* v. *N. Y. C. & H. R. R. R. Co.*, 133 N. Y. 557; *Borden* v. *D., L. & W. R. R. Co.*, 131 N. Y. 671; *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420; *McDonald* v. *L. I. R. R. Co.*, 116 N. Y. 546; *Dobbins* v. *Brown*, 119 N. Y. 188; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248; *Bond* v. *Smith*, 113 N. Y. 378.) It was error for the court to submit to the jury the question as to whether the defendant's rule 38, offered in evidence, was a sufficient rule or whether it was the duty of defendant to furnish another or further rule. (*Larow* v. *N. Y., L. E. & W. R. R. Co.*, 61 Hun, 11; *Houghkirk* v. *D. & H. C. Co.*, 92 N. Y. 219; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 522; *Grippen* v. *N. Y. C. R. R. Co.*, 40 N. Y. 1; *Cole* v. *R., W. & O. R. R. Co.*, 72 Hun, 467; *Morgan* v. *H. R. O. & I. Co.*, 133 N. Y. 666; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582; *Barker* v. *C. P., etc., R. R. Co.*, 151 N. Y. 237; *Fedder* v. *Fellows*, 20 N. Y. 126; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 31, 44, 45; *Hibbard* v. *N. Y. & Erie R. R. Co.*, 15 N. Y. 455.) Disobedience to or violation of defendant's rules by any of the train crew of the milk train constitutes negligence of a co-employee for which defendant is not liable. (*Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 171; *Reichel* v. *N. Y. C. & H. R. R. R. Co.*, 130 N. Y. 682; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77; *Cameron* v. *N. Y. C. & H. R. R. R. Co.*, 145 N. Y. 400; *Slater* v. *Jewett*, 85 N. Y. 61; *Byrnes* v. *N. Y., L. E. & W. R. R. Co.*, 113 N. Y. 251;

*Corcoran* v. *D., L. & W. R. R. Co.*, 126 N. Y. 673.) The execution of the rules promulgated by the defendant is a matter of detail to be observed by the employees, and the defendant is not liable to one of its employees because of injuries occasioned by the fault of another employee in failing to execute or improperly executing such rules. (*Bryant* v. *N. Y. C. & H. R. R. R. Co.*, 81 Hun, 164; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 468; *Wooden* v. *W. N. Y. & P. R. R. Co.*, 147 N. Y. 508.) Plaintiff's judgment cannot be sustained upon the theory of defective brakes or incompetency of defendant's servants. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356; *Kelly* v. *N. Y. & S. B. R. R. Co.*, 109 N. Y. 44; *Chapman* v. *E. R. R. Co.*, 55 N. Y. 579; *De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562; *Devlin* v. *Smith*, 89 N. Y. 470; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77; *Cahill* v. *Hilton*, 106 N. Y. 512; *Crown* v. *Orr*, 140 N. Y. 450.) Intestate's death resulted from the negligence of a co-employee for which defendant is not liable. (*Berrigan* v. *N. Y., L. E. & W. R. Co.*, 131 N. Y. 582; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562; *Boldt* v. *N. Y. C. R. R. Co.*, 18 N. Y. 432; *Sherman* v. *R. & S. R. Co.*, 17 N. Y. 153; *Crispin* v. *Babbitt*, 81 N. Y. 516; *Harvey* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 481; *McCosker* v. *L. I. R. R. Co.*, 84 N. Y. 77; *Loughlin* v. *State of New York*, 105 N. Y. 159; *Hussey* v. *Coger*, 112 N. Y. 614; *Cullen* v. *Norton*, 126 N. Y. 1; *Hogan* v. *Smith*, 125 N. Y. 774.) The long practice of shunting cars in defendant's yard under a proper observance of rule 38 with no previous accident, justified defendant's continued reliance upon the further faithful observance of this rule by its servants. (*Burke* v. *Witherbee*, 98 N. Y. 562; *Frobisher* v. *F. A. T. Co.*, 151 N. Y. 431; *Lafflin* v. *B. & S. R. R. Co.*, 106 N. Y. 136; *Hubbell* v. *City of Rochester*, 104 N. Y. 434; *Loftus* v. *U. F. Co.*, 84 N. Y. 455; *Dougan* v. *C. T. Co.*, 56 N. Y. 1; *Crocheron* v. *N. S. S. I. F. Co.*, 56 N. Y. 656.) The kicking of cars is not *per se* negligence. It is a

universal practice with all railroads. (*Moccia* v. *N. Y. C. & H. R. R. R. Co.*, 46 App. Div. 58; *Corcoran* v. *N. Y., N. H. & H. R. R. Co.*, 46 App. Div. 201; *Hunt* v. *Hara*, 18 Am. & Eng. R. R. Cas. [N. S.] 741; *Schaible* v. *L. S. & M. S. R. Co.*, 97 Mich. 318; *F. C. & P. R. Co.* v. *Mooney*, [Fla.] 12 Am. & Eng. R. R. Cas. [N. S.] 721; *Williams* v. *S. & N. A. Co.*, 91 Ala. 635; *Chicago, R. I. & P. R. Co.* v. *Dignan*, 56 Ill. 487; *Latremouville* v. *B. R. R. Co.*, 48 Am. & Eng. R. R. Cas. 265; 63 Vt. 336; *Campbell* v. *P. R. R. Co.*, 24 Am. & Eng. R. R. Cas. 427.)

*Elisha B. Powell* and *Louis C. Rowe* for respondent. The evidence sustains the finding of the jury that the defendant failed to perform its duty to Dowd to furnish a reasonably safe place in which to do his work. (*Archer* v. *N. Y., N. H. & H. R. R. Co.*, 106 N. Y. 589; *Abel* v. *D. & H. Co.*, 128 N. Y. 662; *Doing* v. *N. Y., O. & W. Ry. Co.*, 151 N. Y. 579, 583; *Whittaker* v. *D. & H. C. Co.*, 126 N. Y. 544; *McGuire* v. *Bell Telephone Co.*, 167 N. Y. 211; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 80.) The evidence sustains the finding of the jury that the defendant was negligent in not making, promulgating and enforcing reasonable rules and regulations for the government of its men in handling its cars at this yard. (*Doing* v. *N. Y., O. & W. Ry. Co.*, 151 N. Y. 579; *Whittaker* v. *D. & H. C. Co.*, 126 N. Y. 549; *Chapman* v. *Erie Ry. Co.*, 55 N. Y. 579; *Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y. 356; *Byrne* v. *Eastmans Co.*, 163 N. Y. 465.) The court could not say as matter of law, under the evidence, that Dowd assumed the risk of the defendant's practice of "kicking" cars upon the tracks where he was directed by the defendant to work as a car repairer. (*Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 65; *Galvin* v. *Mayor, etc.*, 112 N. Y. 223; *Ellis* v. *N. Y., L. & W. R. R. Co.*, 95 N. Y. 546; *Stringham* v. *Stewart*, 100 N. Y. 516; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Ford* v. *L. S. & M. S. R. R. Co.*, 124 N. Y. 493; *Dana* v. *N. Y. C. & H. R. R.*

*R. Co.*, 92 N. Y. 639; *Slater* v. *Jewett*, 85 N. Y. 61; *Gref-hohn* v. *Kreizer*, 62 App. Div. 413.)

Vann, J. The practice of kicking cars from one track to another, upon which men are at work and so situated that they cannot see the approaching danger, was recently con-demned by us as dangerous and reckless. (*Doing* v. *N. Y., Ont. & W. R. Co.*, 151 N. Y. 579, 583.) We held that when such a practice is known to the company, it is bound in the proper discharge of its duties toward its employees to guard against it by proper rules and regulations so far as reasonable and practicable. Judge O'Brien, writing for the court upon this branch of the case said : " We will assume then, what cannot be questioned, that the workmen were doing the defendant's work in a dangerous and reckless manner. But these workmen were doing nothing but what, according to the testimony, they had been doing for years before. If the defendant permitted its employees to carry on its operations upon these three tracks outside the shop in such a manner as to endanger the lives of those inside, who could not protect themselves, it failed to discharge to the deceased the duty which the law imposed upon it of furnishing him a reason-ably safe place to do his work. The defendant had the power to control and regulate its business. The law imposed upon it the duty of making and enforcing such reasonable rules and regulations for the government of the men in its service, as to prevent or guard against injury by one servant to another in so far as that was reasonable and practicable. It could cer-tainly put an end to the practice of propelling cars upon these tracks by a force that could not be controlled, and it could provide for moving them in some other and safer way. In other words, it could change this method of doing the work by making proper rules and regulations to that end. The jury could have found from the evidence that the practice of kick-ing or shunting cars upon these tracks in the direction of the doors of the repair shop was known to the defendant. The danger to be apprehended from such a practice was so obvious

that the defendant, in the proper discharge of the duties which it owed to its employees, was bound to guard against it by proper rules and regulations, so far as that was reasonable and practicable."

The case now before us does not differ in principle from the one cited, for in both the car repairers were so situated that they could not see the approaching train and the practice of kicking cars had prevailed so long that the company is presumed to have known of its existence. In the earlier case there were no rules pertaining to the subject, as the jury might have found, and in this case the jury found that the rules were insufficient. We think they were justified in so finding. While the rules of the defendant might be adequate for the protection of standing cars from an approaching train, which, having an engine attached, could be controlled, the inference was permissible that they were inadequate as against a train moving without an engine on a descending grade, through momentum acquired before the engine was cut off. Signals alone will not stop a train, as they are simply notice to stop. Cars moving without an engine have no inherent power to stop, but must be stopped by brakes, blocks or similar appliances. Miscalculation by the engineer or trainmen as to the force applied, or necessary to be applied, by either; the failure of the brakes, for any reason, to work promptly or efficiently ; a temporary absence of one or more trainmen; or any error of judgment or slight accident resulting in the loss of a few seconds of time, might permit the moving cars to crash into those standing on the same track and kill or maim the repairers working thereunder in ignorance of their danger. With an engine attached, however, the movement of the train would be under control and the hazard greatly reduced. When dangerous work is to be done, the care should be proportionate to the danger and reasonable precautions taken to protect human life. The principle that servants assume the risks of the business is qualified by the duty of the master to protect them from unnecessary hazards, including the negligence of fellow-

servants, by making such reasonable rules as the situation requires. (*Abel* v. *D. & H. Canal Co.*, 128 N. Y. 662.)

The evidence authorized the jury to find that the defendant had not discharged its entire duty in this regard and that some further regulation was required to protect the car repairers from the danger arising from the practice of kicking cars, which for years had prevailed in this yard. A rule prohibiting the running of a train, without an engine attached to control it, upon a track occupied by standing cars when repairers are at work on them, or forbidding the kicking of cars on a track thus occupied, would doubtless have prevented the accident which resulted in the death of the plaintiff's intestate. If we cannot say as matter of law that some such rule was reasonable and practicable, the jury could so find as matter of fact.

The defendant, by an appropriate exception, raised the question of law that the evidence did not authorize the jury to find that the decedent was not chargeable with knowledge of the practice that caused his death. If he knew of the practice and continued to work without any promise by the defendant to correct its methods, he assumed the danger and waived any claim for damages on account thereof. (*Crown* v. *Orr*, 140 N. Y. 450.)

The decedent was chargeable not only with what he actually knew, but also with what he ought to have known by the exercise of ordinary diligence. He had worked for the defendant about six weeks, in all, at different times, between the first of April and the last of August when he was hurt. "He was repairing cars all the time he was there," which kept him in a position where he could not well see the ordinary movement of trains in the yard. A witness who worked "in the same gang with him the most of the time," testified that he had never seen cars kicked "on the sidings where cars were being repaired" while he was working with him. It appeared that cars were kicked upon the sidings every day and sometimes, but not so often when the signals were up. There was little other evidence upon the subject and none showing that

the decedent was ever in such a position as necessarily to have seen cars kicked on a track where repairers were at work. If the burden of proof was upon the plaintiff to show affirmatively the absence of knowledge on the part of her intestate, it may be that the evidence was insufficient for the purpose. If, however, the burden of proof in this regard was upon the defendant, the finding of the jury should be sustained because the evidence did not conclusively establish the fact in accordance with its theory.

When the plaintiff's intestate entered the service of the defendant he impliedly assumed the obvious risks of the business and waived any right of action on account thereof. The common law makes this a part of the contract of employment, the same as if an express stipulation to that effect, committed to writing, had been signed by both parties. Furthermore, by continuing at work, with no prospect of a change of method, he waived such dangers as he subsequently discovered. The doctrine of assumed risks rests upon the implication of a promise by the employee to waive the consequences of dangers of which he is fully aware. It is distinct in principle from the doctrine of contributory negligence although they have frequently been confounded by the courts. In many cases this was owing to the fact that it appeared from the plaintiff's own showing that he knew of the dangers in advance and hence his complaint was properly dismissed. Whether the fact of a known or obvious risk is proved by the one party or the other is immaterial, provided it is proved at all, but the question now before us is upon whom rests the burden of proof in this respect. If the plaintiff knows the danger, under ordinary circumstances he waives it, but is the waiver a defense to be alleged and proved by the defendant, or only a form of contributory negligence, the absence of which is a part of the plaintiff's case?

Contributory negligence prevents a recovery because the plaintiff, of his own volition, intervenes between the negligence of the defendant and the injury received, so that the former is not the sole cause of the latter. Negligence implies

a voluntary act or omission. Upon the assumption that the defendant is guilty of a negligent act and that, intervening between it and the injury, the plaintiff is guilty of a negligent act also which contributes to the injury, as the defendant's negligence is not the sole juridical cause of the accident, the plaintiff cannot recover. The reason does not rest upon contract but on the inherent nature of negligence. As Mr. Wharton says: "The true ground for the doctrine (of contributory negligence) is that by the interposition of the plaintiff's independent will, the causal connection between the defendant's negligence and the injury is broken." (Wharton's Law of Negligence, § 301 and cases cited; Pollock on Torts 434.)

On the other hand the doctrine of assumed risks rests upon a contract impliedly made before the negligent act of the defendant which caused the injury was committed. The plaintiff impliedly assumed the risk in advance and his compensation is presumed to have been adjusted on that basis. Before commencing to work at all, he agreed to waive any right of action which he might otherwise have on account of the habitual or occasional negligence of the defendant, known to him before the accident happened. He impliedly agreed to waive the negligence of the defendant, not the results of his own negligence, for a contract is implied only when reasonably necessary and the law provides for his own negligence without any agreement. One who is injured by his own negligence is regarded by the law as not having been injured at all, so far as other parties are concerned. By assuming the risk, the plaintiff does not intervene but waives. Intervention in order to break the causal connection between the negligent act and the injury must come in between them. The assumption of the risk does not come in between, but is in advance of both. The independent will of the plaintiff is not exercised by intervening, but by voluntarily waiving and releasing, when he enters the service, any right of action which might accrue to him from the cause stated. " Willingness to enter on the danger" differs in principle from " negli-

gence when in it." (*O'Maley* v. *South Boston Gas Light Co.*, 47 L. R. A. 161 and note.)

Nearly all courts recognize the doctrine of assumed risks as resting upon implied contract, although in applying it they frequently refer to the result, without discussion, as contributory negligence. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562, 566; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521, 533; *Gibson* v. *Erie Ry. Co.*, 63 N. Y. 449; *De Forest* v. *Jewett*, 88 N. Y. 264; *Dana* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 639; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 274; *Sweeney* v. *Berlin & Jones Envelope Co.*, 101 N. Y. 520; *Hickey* v. *Taaffe*, 105 N. Y. 26, 35; *Appel* v. *B., N. Y. & P. Ry. Co.*, 111 N. Y. 550, 553; *Buckley* v. *G. P. & R. M. Co.*, 113 N. Y. 540, 545; *Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628, 634; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280, 287; *Ford* v. *L. S. & M. So. Ry. Co.*, 124 N. Y. 493, 498; *Huda* v. *Am. Glucose Co.*, 154 N. Y. 474; *Limberg* v. *Glenwood Lumber Co.*, 49 L. R. A. 33 and cases cited in note.)

Sometimes the principle, which exempts the master from liability when the risk is obvious, is placed upon the ground of waiver, but this is the same in effect, so far as the question under consideration is concerned, for a waiver exists either by contract or estoppel and, unless shown by the plaintiff in developing his case, must be proved by the defendant as a defense. Thus in a recent case where the question related to obvious risks in connection with the Factory Act, we said: "Where the obvious risks of the business result in injury the inability of the employee to sue is due to the fact that he voluntarily assumed those risks, not necessarily under an implied contract to do so, but by an independent act of waiver evidenced by his entering the employment with a full knowledge of all the facts. This distinction is not, however, of great importance in the view we take of the statute and its effect upon the rights of the parties. We are of the opinion that there is no reason in principle or authority why an employee should not be allowed to assume the obvious risks

of the business as well under the Factory Act as otherwise. There is no rule of public policy which prevents an employee from deciding, whether in view of increased wages, the difficulties of obtaining employment, or other sufficient reasons, it may not be wise and prudent to accept employment subject to the rule of obvious risks. * * * The facts in the case at bar, whether it be considered as an action for negligence at common law, or under the statute, show conclusively that the plaintiff assumed the obvious risk of working on the machine, in operating which she was injured." (*Knisley* v. *Pratt*, 148 N. Y. 372.)

The elementary writers as a rule place the exemption upon implied contract. (2 Thompson on Negligence [1st ed.], p. 1008 ; 2d ed. vol. 1, §§ 183, 184 ; Thomas on Negligence, p. 840 ; Deering on Negligence, § 201 ; 3 Elliott on Railroads, § 1288 ; Whittaker's Smith on Negligence, 166 ; 20 Am. & Eng. Encyc. of Law [2d ed.] 112.) Shearman & Redfield, in the first and second editions of their work on Negligence, said : "In actions brought by servants against their masters, the burden of proof as to the master's knowledge, or culpability in lacking knowledge, of the defect which led to the injury, whether in the character of a fellow servant, or in the quality of materials used, rests upon the plaintiff. But, the plaintiff having proved the fault of the master in this respect, the burden of proving that the plaintiff also knew of such defect, and commenced or continued his service with such knowledge, rests upon the defendant." (§ 99.) In the fourth edition they are inclined to recede from this position as unsound (§ 208), but in the fifth and last they returned to the doctrine of implied contract, and, after placing the implication largely on usage and custom, finally said that "no intelligible reason, other than that of implied contract, has ever been suggested by the courts ; and they have always assigned that reason, even when suggesting others."

We think that the burden of showing that the servant assumed the risk of obvious dangers rests upon the master and hence we cannot say, as matter of law, that the jury, in

the case before us, was compelled to find that the plaintiff's intestate knew or should have known of the practice of kicking cars on a track where car repairers were at work  If he did not know of the practice, he did not waive the danger. As no other question requires discussion, it follows that the judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, MARTIN, CULLEN, WERNER, JJ. (and GRAY, J., in result), concur.

Judgment affirmed.