HOELTER v. McDONALD et al.

(Supreme Court, Appellate Division, Second Department. April 13, 1903.)

1. INJURIES TO SERVANT—PLACE FOR WORK—DUTY OF MASTER—RAILROAD TRACK.

Plaintiff was placed in charge of a dummy engine carrying the weight of its water tank very high. While backing down a hill at two or three miles an hour, the engine left the track, and toppled over, and plaintiff was injured. The track was constructed of rails of different sizes, the joints being from 2½ to 4 inches apart. The rail on the side in the direction the engine toppled was three or four inches lower than the one on the other side, and the track was shaky. Plaintiff had never run the engine on the track, and knew nothing of its condition, except that it was shaky. *Held,* that the evidence justified a finding that defendants failed to exercise reasonable care in providing a safe track.

**2. SAME—DELEGATION OF DUTY.**
    Where a master delegates to a servant his duty of furnishing other servants a reasonably safe place in which to work, he is responsible for the failure of the servant to perform that duty.

Appeal from Trial Term, Kings County.

Action by Herbert F. Hoelter against John B. McDonald and another. From a judgment for plaintiff, and from an order denying a motion for a new trial on the minutes, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and HOOKER, JJ.

James A. Dunn, for appellants.
James C. Cropsey (F. W. Catlin, on the brief), for respondent

WOODWARD, J.  The defendants are contractors with the city of New York for the excavation and construction of the Jerome Park reservoir, and the plaintiff was an engineer in their employ, being engaged in running a stationary engine or pump, with occasional duties calling upon him to operate what is known as a "dummy" engine in drawing or pushing cars over a construction line of railroad.  On the 23d of June, 1901, a locomotive engine known as the "Josephine" (which was shown to have been manufactured and sold by a reputable corporation, and which was of the type of engines commonly used in work of this character, although it was in evidence.that this particular engine carried its water tank as a saddle over the boiler, and that the weight was not carried quite so low as in some of the other engines used by the defendants in this work), was placed in charge of the plaintiff, who was directed to use the same in pushing a train of cars, drawn by another engine, up a certain hill.  There was a double track, and the train, with its drawing engine, was upon one of these, while the plaintiff, with the "Josephine" was upon the other, in the rear of the train, pushing.  When he had reached the top of the hill, the plaintiff detached his engine from the train, and reversed his position in the cab, and started to back his engine down the hill.  After running his engine from 100 to 150 feet in this manner, traveling, as he says, at the rate of two or three miles an hour, it suddenly, and without any apparent reason, left the track, toppled over, and the escaping steam scalded the plaintiff in a serious manner, for which he now seeks recovery.  There was evidence from which the jury might properly find that the track in use was constructed of rails of different sizes at the point of the accident; that the joints or ends of the rails were from 2½ to 4 inches apart; that there was a drop of about 2 inches from the rail on the uphill side to the one below it; and that the rail on the left-hand side, in which direction the engine toppled, was 3 or 4 inches lower than the one on the other side—the point of the accident not being upon a curve—and that the track was shaky.  If these facts are true, it will be seen that an engine of the type of the Josephine, carrying its weight well up in the air, and without any weight of cars attached to hold it down, would be quite likely, in going downgrade, to topple over, on falling from a rail two inches or more on the one below

¶ 2. See Master and Servant, vol. 34, Cent. Dig. § 393.

it, and especially as that side of the track was already three or four inches lower than the opposite track. While it is not proper, viewing an accident in the light of what has happened, to hold the defendants liable for not taking extraordinary precautions, the duty is imposed upon them of exercising reasonable care to provide their servants with a reasonably safe place in which to perform their labors; and if the facts and circumstances were such that a reasonably prudent man would or should have foreseen that an accident was likely to happen by reason of the defects in this roadway, the plaintiff is entitled to recover damages, unless the danger was known, or was so obvious that he, in the exercise of ordinary diligence, was bound to know of the danger, in which case he would be deemed to have accepted the risk. Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 468, 469, 63 N. E. 541. While the distinction between contributory negligence and the assumption of known or obvious risks, as pointed out in the case above cited, was not clearly marked in the case now before us, the issues were submitted to the jury under a charge to which the defendants took no exception, and we are of opinion that the verdict of the jury is supported by the evidence. It was shown that the plaintiff had only been employed a comparatively few days, at odd times, in operating any locomotive for the defendants, and that he had never operated the Josephine before the day of the accident. While he testifies that in running his engine over the track before the accident he had noticed that it was a little shaky—that is, that it moved sideways—he says that he did not know the condition of the track at the point where the accident occurred, and we do not find that he had ever run the engine down the hill on the track in question, and, as explained by the expert engineer, the danger would not manifest itself in going up the hill. It is true, of course, that this was a mere temporary railroad, to be used in the work of construction, and the plaintiff would be deemed to have accepted the ordinary risks incident to a railroad which it was not to be expected would be fully ballasted; but the master did owe the duty of exercising reasonable care to provide a reasonably safe place in which the plaintiff might labor. The plaintiff is not to be presumed to have accepted risks which were not known to him, or which were not obvious. He had a right, in the exercise of reasonable diligence on his own part, to assume that the master had performed his duty; and the jury considering the conflicting evidence, must be deemed to have found that the defendants in this case had not exercised that reasonable degree of care which the circumstances warranted and demanded.

We think the evidence is sufficient to justify the inference of reasonable care on the part of the plaintiff. He was running the engine at the rate of two or three miles an hour, along a straight track, which he had the right to assume, in the absence of knowledge to the contrary, was reasonably safe for the use to which it was put by the defendants. He had turned around in the cab, so as to command a view of the tracks in front of him, and there was little else that he could be expected to do under the circumstances.

The suggestion of the appellants that the condition of the track was due to the negligence of the track walker, a fellow servant, is without merit. The duty of furnishing to a servant a reasonably safe place in

which to work is a duty of the master, and if he leaves that duty to a servant the master accepts the responsibility for the failure of the servant to perform that duty. This is universally supported by the authorities, and they need not here be cited.

We have examined the exceptions called to our attention by the learned counsel for the defendants, but we do not find reversible error; and, while the conduct of the plaintiff's counsel does not commend itself, we are of opinion that the learned court fully met the situation, and that the defendants cannot fairly claim to be prejudiced by the facts as they appear in the record.

The judgment and order appealed from should be affirmed, with costs. All concur.