(89 App. Div. 130.)
### EHRENFRIED v. LACKAWANNA IRON & STEEL CO.

(Supreme Court, Appellate Division, Fourth Department. December 8, 1903.)

1. INJURY TO EMPLOYÉ—ASSUMPTION OF RISK.

   A cupola tender in a factory, who personally attended to repairing the inside of a cupola, and had charge of the work of bringing iron and other materials to the door of the cupola, being in every way qualified for the position, and being perfectly familiar with the surroundings, assumed the risk of the injury which occurred to him by a wheel brought to the door of the cupola by a co-employé, while he was inside, rolling in and falling on him.

2. SAME—PLEADING.

   Where evidence, in an action for injury to a servant through negligence of the master, proving assumption of risk, has been introduced by plaintiff, and has been admitted without objection, the defendant may avail himself of that defense without having pleaded it.

   Spring and Hiscock, JJ., dissenting in part.

Appeal from Trial Term, Erie County.

Action by Frank Ehrenfried, administrator, against the Lackawanna Iron & Steel Company. From a decision granting defendant's motion for a nonsuit, and dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Thomas A. Sullivan, for appellant.
Louis L. Babcock, for respondent.

McLENNAN, P. J. The facts are hardly in dispute, but, in so far as they are, a nonsuit having been granted, the plaintiff is entitled to the inferences most favorable to her which may be legitimately drawn therefrom. Veazey v. Allen, 173 N. Y. 359–367, 66 N. E. 103.

The defendant, in connection with its business of manufacturing steel, was engaged in operating a foundry in which was constructed a cupola or furnace for the purpose of melting iron. The cupola was a circular structure, lined with fire brick, 48 inches in diameter, and extended from within a few feet of the foundry floor up through a charging room or scaffold, so called, and through the roof of the

building. About 18 feet from the bottom of the cupola there was an opening 27 inches wide and 33½ inches high, called a "charging door," which opened into the charging room, the bottom of which opening was 1½ inches above the level of the floor of the room, which was made of iron. The iron to be melted, and other material used in connection therewith (coal, coke, and limestone), was conveyed in wheelbarrows into the charging room, and deposited on the floor near the cupola door in separate piles; and when the cupola was ready to be charged a fire was started in the bottom, and such materials, in proper proportions, were shoveled or thrown into it through the door, all as directed by, and under the supervision of, a cupola tender. After each blast, and before again charging the cupola, it was necessary to clean it out and repair the lining, by plastering portions of it with cement, and putting new fire brick in the place of those found to be defective. This work was done by the cupola tender personally. On the morning of the 5th day of May, 1902, plaintiff's intestate, who at the time was in defendant's employ as cupola tender, was 29 years of age, and, so far as appears, was in every way qualified to discharge the duties of such position, was in the bottom of the cupola, cleaning and repairing it. Other employés of the defendant were engaged in wheeling scrap iron and other materials to be used in the blast into the charging room, and dumping them on the floor. A circular piece or wheel of such iron, and another of irregular shape, when dumped from one of the wheelbarrows, rolled several feet, through the door of the cupola, one or both of them striking plaintiff's intestate, and injuring him in such manner that he died soon after. To recover the damages sustained by his death, this action is brought.

The deceased entered the service of the defendant in January, 1902, as a common laborer in the foundry. A month after he was put to work wheeling iron, coke, and limestone to be used in the cupola into the charging room. He continued at that work until March 21, 1902, when he was made cupola tender, and was put in charge of the cupola. He worked in such capacity from that day until his death, nearly two months, personally cleaning out and repairing the cupola each morning, while the iron and other materials were being taken into the charging room under his direction, and, after he had put the cupola in proper condition, and started a fire in the bottom, either putting the iron and other materials through the door into the cupola himself, or causing it to be so put in by others under his supervision, and exactly as directed by him.

On the 23d day of March, 1902, after plaintiff's intestate became cupola tender, the cupola was lowered. Prior to that time the bottom of the cupola door was 18 inches above the level of the floor of the charging room. Plaintiff's intestate assisted in making the change; knew exactly what the conditions were after such change was made; every feature of the situation was open, notorious, and visible; and for nearly two months after the change was made the cupola was used and operated under the direction and supervision of the deceased. During all that time he knew how the iron and

other materials were conveyed into the charging room; where such materials were dumped upon the floor; knew that his duties required him to be in the bottom of the cupola every morning.  The evidence establishes that all the work done each day in connection with the cupola was either done by the deceased personally, or under his immediate direction and supervision.  It is suggested in appellant's brief that the deceased was not present when the cupola was lowered, and did not assist in making such change.  We think that is not the fair import of the evidence; but we do not consider it of importance, because concededly the deceased knew the change had been made, and had operated the cupola as foreman or tender for a period of nearly two months after it had been lowered.

The evidence wholly fails to establish that the defendant was guilty of negligence which caused the injury complained of, and is not sufficient to raise a question of fact for the jury in that regard.  In what respect did the defendant neglect to perform any legal duty imposed upon it?  It must be conceded that it had the right to operate a cupola with a door through which the necessary materials might be put into it, the bottom of which was only 1½ inches above the level of the floor upon which such materials were deposited.  The jury cannot be permitted to say that the defendant was negligent because the bottom of such door was not raised 10, 20, or 30 inches above the level of the floor.

It is said that, with a construction such as existed here, the defendant was guilty of negligence because it did not make and promulgate proper rules governing the conduct of its employés, and such as would have protected an employé working in the bottom of the cupola against the danger of being struck by pieces of iron rolling from the floor into the cupola through the door.  Such rule, if promulgated, would have been nothing more or less than a warning to the employés working in the charging room to be careful not to allow pieces of iron to drop into the cupola when they knew or had reason to believe another employé was working at the bottom. It would state, in effect, that no employé must do an act which necessarily and obviously will result in injury to another employé.  We think there is no rule of law which requires a master to make and promulgate a rule of that character, but if such warning, or any other, was necessary for the guidance of the employés working in the charging room, it was the duty of the deceased to have given it.  Such employés were working under his direction.  He was their boss, and controlled their actions, and he fully understood all the dangers to be apprehended.  If a foreman of a gang of men engaged in digging a trench assumes to go into it, and is struck by a falling stone permitted or caused to fall by one of the men working above, the master is not liable because he failed to make rules warning the employés of the danger of permitting a stone to fall under such circumstances, or because he failed to make a rule prohibiting any employé from permitting such occurrence.

In the case at bar the accident resulted because of the negligence of a co-employé—of the man from whose wheelbarrow the piece of

iron in question fell. He knew the deceased was in the cupola, and he carelessly dumped his load of iron too near the cupola door, in view of the fact that in the load there was an iron wheel which might roll almost any distance. We think that for the negligence of such co-employé the defendant was not liable.

The case, however, was disposed of by the learned trial court on the broad ground that the deceased assumed the risk of the accident which befell him, and therefore that the plaintiff was not entitled to recover. As already pointed out, plaintiff's intestate knew for at least three months previous to the accident the exact condition of the cupola; precisely how it was operated; the manner of doing the work by the other employés. In fact, as is shown, for more than a month previous to the accident it was all done either by him personally, or under his direction and supervision. Under those circumstances, we think it clear that he assumed the risk, as was held by the learned trial court.

The only suggestion made in answer to this proposition by the learned counsel for the respondent is that such defense was not pleaded, and that therefore, under the decision in Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 468, 63 N. E. 541, was not available to the defendant. All the facts tending to establish the defense of assumption of risk were proven by the plaintiff without objection. At the close of the plaintiff's case a motion for a nonsuit was made upon the ground, among others, that all the "conditions there were perfectly plain and obvious to the deceased in doing the work that he did." The motion was resisted upon the ground that the defense of assumption of risk was not pleaded in the answer. After a full statement of the evidence bearing upon that question, and of the law applicable thereto, the learned trial court granted the nonsuit, stating at the close that:

"He [the plaintiff's intestate] knew all the conditions which surrounded him. He continued in the employ. He worked there days and weeks, and finally received the injury which resulted in his death. My notion is that the risk was assumed by this man, and that there can be no recovery in this action."

We think the Dowd Case, supra, is not authority for the proposition that, where all the evidence which establishes the assumption of risk is introduced by the plaintiff, such defense is not available to the defendant, even though not pleaded. The failure of the trial court to direct that the pleadings be amended to conform to the evidence introduced without objection, even if that should have been done, in no manner injured the plaintiff. It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed with costs.

WILLIAMS, J. (concurring). I concur in the opinion of McLENNAN, P. J., for affirmance, but desire to say in addition: It is not necessary to plead "assumed risk." During all the years that negligence actions have been brought by employés and litigated, it has never been held to be essential, and such a rule should not now

be imported into the law relating to those cases. The only excuse for doing so is the claim that the Court of Appeals so held in the Dowd Case, 170 N. Y. 459, 63 N. E. 541. The question was not raised in that case, was not discussed, nor was this rule there held. The only intimation in the case looking in that direction was in a question asked by the judge who wrote the opinion. He did not answer the question in the affirmative, and the editorial headnote does not refer to it. The question there being considered was merely where the burden of proof upon the question of assumed risk rested, and the court held that it was upon the defendant. Of that there could be no doubt. That, however, is far short of a holding that it must be affirmatively pleaded in the answer. The allegation in the complaint in an employé's action is that the defendant was negligent in failing to perform a duty owing to the employé to furnish (for instance) a reasonably safe place to work. In effect, the allegations are that the duty was owing to the plaintiff, and that it was not performed. A general denial, in effect, denies that the duty to the plaintiff existed. Prima facie, the duty was imposed upon the defendant; but under the general denial the defendant may prove that the duty in the particular case did not exist, because the plaintiff assumed the risk of working in the place as it was, although it may have been unsafe. The general denial should be held sufficient to enable the defendant to prove such assumption of the risk. But even if technically or theoretically the court can reason out the necessity of an affirmative allegation, still such a rule has never before been held, although actions for negligence have been brought and maintained by employés since a time when the memory of man runneth not to the contrary; and I think, therefore, there was no design in the Dowd Case to establish this new rule of pleading, and that the Court of Appeals will not so hold when its attention is brought to the direct consideration of it. It was not so held in the Dowd Case, and I cannot believe it will be held in any other case.

STOVER, J., concurs.

SPRING and HISCOCK, JJ., dissent upon the ground that the reasoning in Dowd v. N. Y., O. & W. Ry. Co. 170 N. Y. 468, 63 N. E. 541, leads to the rule that the assumption of risk is an affirmative defense, which must be pleaded, and that, if this is the correct rule, compliance therewith is not obviated because the plaintiff, in sustaining other issues, has presented evidence which defendant might utilize to sustain said defense; the objection being made in due time and form that the same had not been pleaded.