no allegation as to the condition of the instruments when delivered to the defendant, it does allege that:

"The defendant negligently and carelessly damaged and injured, or permitted to be damaged or injured, the said dynamo, volt meter, and ampere meter by water or otherwise."

The demurrer must therefore be overruled. Settle judgment on notice.

---

ANABLE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 4, 1910.)

1. MASTER AND SERVANT (§ 146*)—INJURY TO SERVANT—NEGLIGENCE—FAILURE TO MAKE AND ENFORCE RULES.

Where it was the general practice to remove hose from standing cars in a railroad yard to supply defective hose on cars in trains, and the brakemen required to do the work were obliged to go to the end of the car between the rails and sometimes down on their hands and knees, and the work of shunting cars in the yard was constantly going on, the railroad was negligent for failing to enforce working rules to protect a brakeman while at work, and it was liable for injury to him caused by the kicking of cars against the standing car at which he worked.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 284; Dec. Dig. § 146.*]

2. MASTER AND SERVANT (§ 146*)—INJURY TO SERVANT—NEGLIGENCE—ENFORCEMENT OF RULES.

A rule of an employer which remains unenforced and unobserved is in effect no rule, and, where a rule is necessary, the duty of enforcing as well as making it is on the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 284; Dec. Dig. § 146.*]

Williams, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Claude C. Anable against the New York Central & Hudson River Railroad Company. From a judgment of dismissal, plaintiff appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Geo. W. Reeves, for appellant.
Henry Purcell, Jr., for respondent.

KRUSE, J. The plaintiff, a brakeman in defendant's employ, was detaching an air brake hose from a car. The car was struck and set in motion by shunting other cars against it, which resulted in crushing the plaintiff's leg, making it necessary to amputate the leg. The accident occurred in the defendant's yard at Watertown, in this state, at night. A train was being made up there to be taken out by the train crew to which plaintiff belonged. A bursted air brake hose was discovered on one of the cars of the train, and the plaintiff went to take a hose from another car, as was customary in such cases. He was engaged in taking off the hose when the accident occurred. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

yard has numerous tracks where switching is done. The plaintiff's train was on track 4, and the car from which he was removing the hose was on track 3. Both tracks are connected with the lead track. The car from which the hose was being detached stood about three car lengths (about 105 feet) from the lead. Before going between the cars and attempting to detach the air brake hose, the plaintiff observed that the switch light at the lead was white, indicating that the switch was closed against track 3; thus apparently making it safe to do his work. He had been at work about a minute or a minute and a half, according to his estimate of the time, stooped over between the cars, when two cars were kicked or shunted from the lead onto track 3 and against the standing cars, with the result stated. It was a general practice to remove hose from idle, standing cars, in the yard, to supply defective hose on other cars, in trains. It was done very frequently, and, according to plaintiff's testimony, on about every trip that he made; and he had been in defendant's employ about 16 months at the time of the accident. Ordinarily, it took two minutes or more to remove the hose. It was customary to kick and shunt cars in the yard, as was done upon this occasion.

Among the defendant's operating rules is the following:

"26. A blue flag by day and a blue light by night, displayed at one or both ends of an engine, motor, car or train, indicates that workmen are under or about it; when thus protected it must not be coupled to or removed. Workmen will display the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track, so as to intercept the view of the blue signals without first notifying the workmen."

Rule B1 provides as follows:

"B1. While the special rules are subdivided for convenience, they apply equally to all, and must be observed wherever they relate in any way to the proper discharge of the duties of any employé."

Rule 597 provides that car inspectors, when inspecting or repairing cars which they do not wish moved, must protect themselves by placing conspicuously a blue signal on both ends of the car, as prescribed by rule 26; but it does not seem to be applicable to work like the plaintiff's. At least, as it now appears (a nonsuit having been granted at the close of plaintiff's evidence), the rule, if applicable, was not enforced. The plaintiff testified that they were never given any blue lights; that their trains were not provided with blue lights; and there is no proof that the rule was ever observed to protect brakemen in doing work under circumstances such as resulted in the plaintiff's injury.

I am unable to see why rule 26 should not have been made applicable to brakemen, when doing work such as this. If the rule is impracticable in its application to such work, it would seem that some method should be devised to protect brakemen from injury when thus at work, even if necessary to have an extra man to watch and warn. The brakeman was required, in doing the work, to go to the end of the car, between the rails, sometimes down on his hands and knees, it ordinarily requiring several minutes to disconnect the hose; and the work of shunting and kicking cars in the yard was going on constantly.

I think the manner of carrying on the defendant's work in the yard, and the nature of the work in which the plaintiff was engaged, was such as to bring this case within that class of cases where it has been held that railroad companies may be required to make and enforce working rules to protect and safeguard their workmen. Dowd v. N. Y. O. & W. Ry. Co., 170 N. Y. 459, 63 N. E. 541; Devoe v. N. Y. C. & H. R. R. Co., 174 N. Y. 1, 66 N. E. 568; McCoy v. N. Y. C. & H. R. R. Co., 185 N. Y. 276, 77 N. E. 1174. Whether the defendant failed in its duty in that regard was, I think, a question of fact under the circumstances of this case.

It may well be that rule 26 was originally intended to apply to work of this character; but a rule unenforced and unobserved will do no good. If such a rule was necessary, the duty of enforcing as well as making it was upon the defendant.

The judgment and order should be reversed, with costs to the appellant to abide the event. All concur, except WILLIAMS, J., who dissents on the ground that the defendant was not shown guilty of actionable negligence nor the plaintiff free from contributory negligence.