MANCHESTER v. MARSH et al.

(Supreme Court, Appellate Division, Third Department. November 22, 1912.)

Appeal from Trial Term, Saratoga County.

Action by Fred Manchester, by Jennie Mason, his guardian ad litem, against William H. Marsh and another, doing business as W. H. Marsh & Co. From a judgment granting a nonsuit and dismissing the complaint at the close of plaintiff's case, he appeals. Reversed, and new trial ordered.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Edgar T. Brackett, of Saratoga Springs (Benjamin P. Wheat and Harold H. Corbin, both of Saratoga Springs, of counsel), for appellant.

Rockwood & McKelvey, of Saratoga Springs (L. B. McKelvey, of Saratoga Springs, of counsel), for respondent.

PER CURIAM. Judgment reversed, and new trial granted, with costs to appellant to abide event, upon the authority of Fitzwater v. Warren, 206 N. Y. 355, 99 N. E. 1042, in the Court of Appeals. All concur; BETTS, J., in opinion, in which KELLOGG, J., concurs.

BETTS, J. (concurring). The plaintiff, a lad about 18 years old, had been employed by the defendants five days. He had been previously employed for about five years in a planing mill at work upon a planer, which was an entirely dissimilar machine to the jointer upon which he was at work at the time of the accident. He was hired by one of the defendants, who took him to his son with the statement to show the plaintiff what to do. Then the defendant left the plaintiff and gave him no other directions. The son took him to a jointer, which plaintiff had never run before, and set him to work on it, showing him how to run the machine, running a piece of board across the machine, which was set and running at the time. The knives re-

volved towards the workman. This son told the plaintiff, in regard to the operation of the machine, to be careful when the machine was in operation not to get caught, and said nothing else to him as to dangers to be apprehended or avoided. There was no guard of any kind over the portion of the machine where the knives came in contact with the board that was being worked on, and no guard along one side of the top of the jointer. This was on Monday, and the plaintiff worked about half of the time upon this machine until Saturday. The remaining time the defendant's son told plaintiff that the kind of work required on the jointer at the time was not such as plaintiff could do, and set the plaintiff at work at a planer, or some other work about the mill, and he himself ran the jointer. At one time, when defendant's son, Marsh, was running this jointer, plaintiff saw something upon it, which it might inferentially be claimed from the evidence was a guard, although plaintiff did not know that to be a fact, and was not given any guard to use, and when he returned to the use of the machine there was no guard on it. On Saturday morning the plaintiff was at work on the jointer on boards to be the bottom rails of blinds. These were about 10 inches long and about 8 or 9 inches wide, and an inch or an inch and a quarter thick, and while running one of these pieces of board over the knives the board wabbled and slipped in some shape from his hands, the precise way in which the plaintiff is unable to accurately describe, on account of the swiftness with which it occurred, and in endeavoring to catch it to straighten it up in position the plaintiff's left hand came in contact with the knives, and he lost two fingers and badly injured a third. He states he was endeavoring to catch the board, and keep it from coming back and hitting him, or to get it back in place when the injury occurred. The plaintiff testified to substantially these facts, and a manager of a planing mill who had similar jointers testified that they used a guard and gauge upon it; that it was practical and in use. He also testified that the jointer used by the plaintiff and the planer which he had previously worked on before going to work for the defendant were entirely dissimilar. The plaintiff then rested. Thereupon the court granted the defendants' motion for a nonsuit, on the ground that the defendants were negligent, but that the plaintiff was guilty of contributory negligence, and that he had assumed the risk of his employment; and from the judgment entered thereon the plaintiff appeals.

The plaintiff had seen a jointer in the planing mill where he had worked before, but had not worked on it, and in that mill he was required to attend to the business he was to work at and not interfere with other machines. In the planer upon which he had worked the board drew itself in the machine, and in the jointer the board had to be held and worked along. It was fairly proven that the jointer machine was capable of being guarded, and that guards were used in other factories upon practically the same machine, and also that no instructions whatever were given to plaintiff, except to look out and not get his fingers caught. The defendants were evading the statute and committing a crime in permitting the running of this unguarded machine. The plaintiff in this business, in my opinion, as-

sumed the risk of the work only after the defendants had complied with existing statutes as to the care of their employés and guarded their machinery. This the defendants had not done, and in my opinion the plaintiff had not assumed the risk of operating this dangerous unguarded machine. Graves v. Stickley Co., 125 App. Div. 132, 109 N. Y. Supp. 256. In that case plaintiff was injured while working over unguarded knives in a machine known as a jointer, and his left hand came in contact with such knives and was injured. The jury found that it was practicable to guard the knives and that the plaintiff was free from contributory negligence; the court saying:

"According to the provisions of that act [section 3, Employer's Liability Act (Laws of 1902, c. 600)], the presumption now is that an employé, by entering upon or continuing in the service, assents to the necessary risks only of his occupation or employment, and those are defined to be such as remain after the employer has exercised due care and complied with the laws for the greater safety of the employé. The risk of the unguarded knives was not a necessary risk, since the defendant had not complied with the laws for protecting the employé by guarding the knives as it was required to do. While that was the presumption, it was not conclusive. The question still is whether that presumption has been overcome."

In that case the case was sent to the jury after a trial, and the jury found in favor of the plaintiff, which upon appeal was affirmed by the Appellate Division and Court of Appeals (195 N. Y. 584, 89 N. E. 1101), and in my opinion is very similar to the case that we are considering. See, also, Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 63 N. E. 541, the headnote of which is:

"The burden, therefore, of establishing, in an action against the master for negligence, the waiver implied by the assumption of the risk, rests upon the defendant. The waiver is not a form of contributory negligence, the absence of which must be affirmatively proved in order to make out the plaintiff's case, and the fact that he fails to establish affirmatively that he had no knowledge of the risk, and, therefore, did not waive it, does not prevent the jury from finding that he was not chargeable with knowledge thereof, in the absence of evidence conclusively establishing such knowledge."

The Graves v. Stickley Co. Case, supra, arose under the Employer's Liability Act, while the Dowd Case, supra, arose under the common law, and, as we have seen, practically the same rule was applied; that is, that the burden of establishing the waiver implied by the assumption of the risk rests upon the defendant. See, also, the prevailing opinion in Fitzwater v. Warren, 206 N. Y. 355, 99 N. E. 1042, a common-law case recently decided, where Chief Judge Cullen says:

"Moreover, in this case the assumption of risk was a fair question of fact for the jury. * * * To establish the defense of assumption of risk, the burden of proof rests on the defendant. * * * The plaintiff, without any previous experience in his work, was injured within four days after his employment. The statute which the defendants violated was enacted for the express purpose of safeguarding the persons of employés. Where an employer deliberately fails to comply with the statute, the court should be loath, except in a very clear case, to hold that the employé assumes the risks of his master's violation of the law. Otherwise, the beneficent results sought to be attained by the statute will fail to be realized. There seems at the present day an effort by constitutional amendment to render a master liable to his employé for injury received in his employment, though the master has been guilty of no fault whatever; and I feel that such effort is in no small

measure due to the tendency evinced at times by the courts to relieve the master, though concededly at fault, from liability to his employé on the theory that the latter assumed the risk of the master's fault."

As to the plaintiff being guilty of contributory negligence as a matter of law, he was working on this machine unguarded, as he had been told to work it, and was attending to his work. Whether the knives struck a knot in the board, or whether they did not squarely hit the board, or the board was not squarely in proper position at the time of its beginning to wabble and turn over, is uncertain. I can find nothing in the evidence to show that this young lad was guilty of contributory negligence as a matter of law at the time of the accident. I think the question as to his being guilty of negligence which contributed to the injury was a question for the jury, and should have been to them submitted.

It follows that the judgment appealed from should be reversed, with costs to the plaintiff to abide the event of the action.

KELLOGG, J., concurs.