(96 App. Div. 550.)

## AUSTIN v. FISHER TANNING CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—INSTRUCTIONS—LAW OF THE CASE.

Where, in an action for injuries to a servant, negligence was alleged, in that defendant failed 'to make suitable rules for the safety of its employés, and the court's charge that, if deceased, knowing that defendant had not made a rule that no machine should be started while it was being repaired, continued his employment, he thereby assumed the risk of defendant's failure to promulgate such rule, was not excepted to, such instruction constituted the law of the case on appeal.

2. SAME—OBVIOUS DANGER.

Where a fleshing machine, run by electricity, consisted of a steel drum with an opening of about a quarter of its circumference, and knives fixed about the drum so close that when a hide was placed upon it they would remove the fleshings therefrom, and the entire drum was encased in a box, so that the refuse matter would not fly from the 'machine, the dan-

ger to a servant attempting to repair such machine while in operation was so open and apparent that no rule for the government of employés in that particular was required.

3. SAME—FELLOW SERVANTS—CAPACITY—ASSUMED RISK.

Deceased, whose duty it was to repair machinery in a tannery, was directed to repair an electric fleshing machine operated by F., who had been decedent's co-employé for a year and a half. Power was communicated to the machine by a shaft, which would revolve loose until a clutch was thrown into gear, when the drum of the machine would revolve toward the operator. The power could also be turned off entirely by an electric switch lever near by. Deceased, without turning off the power, but simply throwing the clutch out of gear, placed his head and shoulders in the drum, and, while so engaged, directed F. not to throw on the power. F., who was a foreigner, and unable to understand English perfectly, misunderstood the direction, and started the machine, by which deceased was immediately killed. It was no part of F.'s duty to operate or control the machine while deceased was repairing it, and deceased was familiar with the entire situation, including F.'s lack of knowledge of English, of which he had made no complaint to defendant. *Held*, that decedent assumed the risk of injury by reason of F.'s unfamiliarity with the English language.

Hiscock, J., dissenting in part.

Appeal from Trial Term, Cattaraugus County.

Action by Frances D. Austin, as administratrix of the estate of Frederick H. Austin, deceased, against the Fisher Tanning Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

James Metcalf, for appellant.
Thomas H. Dowd, for respondent.

STOVER, J. Plaintiff's intestate died as the result of an accident which occurred at the defendant's tannery, at the village of Salamanca, on November 22, 1900.

The machine upon which the accident occurred was known as a "fleshing machine." It consisted of a steel drum, supported upon standards at each end, covered with rubber and wire, about 1¼ inches thick, about 5 or 6 feet in length, 4 feet in diameter, with an opening of about one-quarter of its circumference. Through the center of the drum was a shaft, to which the drum was attached by arms. At one end was a drive wheel 30 inches in diameter, two pulley wheels, and a motor. Above the drum were the knives, which were so close to the drum that, when a hide was placed on it, they would remove the fleshings from it. This was incased in a box, so that the refuse matter would not fly from the machine. The power used was electricity The power was turned on or off the machine at a switch on the wall, 5 or 6 feet from the back of the machine. The quantity of power was regulated by a drum 6 or 8 inches long, just below the switch. The power was put upon the drum by a clutch, which was operated by a lever on the right and in front of the drum. The pulley and shafting would revolve loose until this clutch was thrown in, when the drum would revolve toward the operator. On the morning of the accident the foreman in charge of the beamhouse found the machine out of or-

der. Foote, the workman who had charge of the operation of the machine in the ordinary operation of fleshing, went to the plaintiff's intestate and reported that the machine was out of order, and deceased came to repair it. The deceased was, and for a year previous had been, the master machinist or general repairman in charge of all the machines, some ·75 in number, in the defendant's tannery. The deceased had been in the habit of fixing this machine when out of repair, and had frequently fixed it. The deceased, upon arrival at the machine, went to the rear. At this time the power was on, but the drum was not revolving; the clutch not having been thrown in. Up to this point there is practically no dispute as to the occurrence, and it is not disputed that about this time the deceased undertook either the examination or repair of the machine, and a little later placed his head within the opening in the drum. Foote, the operator in charge, thought Austin told him to start the drum, as it was a little high; the inference being that it was necessary to change the location of the opening, so that the repairs could be more conveniently made. Foote went to the front of the machine and operated the lever which threw the clutch in, and the deceased was heard to utter a cry, and was soon after found at the rear of the machine, injured fatally, having been struck by the revolving drum; he having his head and shoulders in the opening at the time the power was turned on. Foote had been in the employ of the defendant about a year and a half, operating this machine. Plaintiff's intestate had been in the employ of the defendant during this time, and was accustomed to repairing this and other machines as they became out of order. Foote, the operator, was a Pole, and it is claimed on behalf of the plaintiff that his knowledge of the English language was so imperfect that he was unable to understand directions that were given to him; that, by reason of his imperfect understanding of the language, he misunderstood the direction given by Austin, and started the machine, causing Austin's death. A witness for the plaintiff testified, under objection, that some 20 to 25 minutes after the accident, and upon regaining consciousness, the deceased said, "Billy, Billy, I told you not to start the machine."

The negligence of the defendant is predicated upon two propositions: First, in failing to use reasonable care to make and enforce proper and suitable rules for the safety of its employés; and, second, in employing Foote to operate the machine, he being incompetent by reason of his failure to understand the English language.

As to the first proposition the court was asked to charge:

"That if Austin, knowing that defendant had not made and promulgated a rule that no machine should be started while it was being repaired, yet nevertheless continued his employment, that such continuance in his employment amounted to a consent upon his part to incur the risk to which he was thereby exposed, if any, and dispensed with the duty, if any, of the defendant to make and promulgate such a rule."

This was charged, and no exception appears thereto in the record, so that this becomes the law of the case, and, under the facts as they appear, the jury must have found upon this proposition against the contention of the plaintiff, or, if otherwise, the finding was unsupported by the evidence. But beyond this, we think the danger to one

repairing a machine of this kind while in operation is so open and apparent that a rule for the government of employés in that particular is not called for. As was said in Ehenfried v. Lackawanna Iron & Steel Company, 89 App. Div. 130, 85 N. Y. Supp. 57, it would be simply a rule that an employé should not do an act which would necessarily and obviously do an injury to another employé, and the master is not bound to promulgate rules under such circumstances.

The other proposition which the plaintiff has urged with a great deal of force is that defendant was guilty of negligence in employing Foote, who, by reason of his ignorance of the language, was unable to understand directions for the operation of the machine. And beyond this comes the consideration of the contributory negligence of the deceased.

The deceased was a machinist, and, by all fair inferences, must have known the dangerous character of the work, namely, that, with the power turned on the machine, the simple operation of the lever would set the drum in revolution, and necessarily injury would result to one whose body was within the opening of the drum. It would have been a very easy matter to have turned the power off entirely, so that the repairs could have been made with greater safety to the mechanic.

We think the fact that the operator of the machine did not have full control of the English language was not sufficient to render the defendant liable for the death of plaintiff's intestate. The operator had been in charge of this machine, and, so far as the evidence shows, was able to operate it, and had operated it for a long time before the accident.

It was stipulated upon the trial that it was the duty of Austin to repair this machine whenever it was reported to him, or whenever it came to his attention in any manner. This placed the machine for the time being in the care of Austin, the mechanic; and it was not part of Foote's duty, so far as the record appears, to run the machine or control it during the time that Austin was engaged in its repair. Austin had been a fellow employé of Foote for more than a year; was familiar with the entire situation, including Foote's lack of knowledge of the English language. With full control of the machine, he left the power on, and gave instructions to Foote either to start the machine, or not to start the machine. He thereby took the risk of his own action, and defendant cannot be rendered liable therefor. He for the time being had authority and control over the machine, and could have shut off the power entirely and made his repairs with safety. He could have said nothing to Foote, but concededly he did say something to him, giving him some directions as to the power. Foote says he understood him to say to start the machine, while, according to the statement admitted in evidence, he said not to start the machine. In either event, he acted with full knowledge of the situation, and must be held to have assumed the risk, which was as apparent and open to him as to the defendant. If there was danger to be apprehended from the lack of knowledge of the language on the part of Foote, this lack of knowledge was just as apparent to Austin, and had been known to him just as long, as to the de-

fendant, and his continuance in the employment with this servant was an assumption of the risk of any danger growing out of it.

The court was asked to charge:

"That if Austin knew from his association and work with Foote or otherwise, or should have known of Foote's unfamiliarity of the English language, but notwithstanding this continued to work with him without complaint, he assumed the risk of injury arising therefrom, and the plaintiff cannot recover."

This was refused, and an exception duly taken.

There is no evidence anywhere in the case that any complaint had ever been made to the defendant that Foote was incompetent by reason of his alleged imperfect knowledge of the language, and, as indicated above, this imperfection must have been as well known to Austin as to the defendant; and if he, without making any complaint, undertook to have Foote assist him in making repairs, he assumed whatever risk there was in the situation. Foote's employment was in the operation of the machine in its ordinary working, and there is no complaint that he was not competent to perform the duty for which he was employed. It was not his duty to assist in the repairing of the machine, and, so far as he did take part in it, it was at the invitation of the deceased, and was no part of the duty for which he was employed by the defendant. It would appear, rather, that whatever he did was at the suggestion of the deceased, and in aiding him in the performance of his (the deceased's) duty. When Austin began the repair of the machine, the control of the power was within his sight and reach, at the rear of the machine, and it would seem that ordinary caution would have prompted him to stop the machine entirely before placing himself in a position where he might be injured by its revolution. Why he should not have done this, rather than to rely upon instructions to one who, it is now claimed, could not understand the language, and whose deficiency in this respect was well known to him (Austin), is without explanation. It seems that the explanation of this unfortunate accident is that the situation appeared to Foote to be such that it was necessary to turn the drum in order to get at the spot that needed repairs, and he so understood his instructions. The deceased placed his head within the drum, not expecting that it would revolve; either relying upon Foote's knowledge of the situation, or through some miscalculation as to the revolving of the drum, neither of which situations was caused by any negligence which can be imputable to the defendant. Foote knew that the deceased was near the opening, and it is hardly to be conceived that he would have started the machine, had he known that the deceased was in a position of danger. It is an accident which has happened through misunderstanding, but one which might have happened, had Foote had perfect mastery of the English language, and for which the defendant cannot be held liable.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except HISCOCK, J., who dissents only from that part of the decision which places the reversal upon the facts.