(128 App. Div. 58.)

VAN ALSTINE et al. v. STANDARD LIGHT, HEAT & POWER CO. OF UNADILLA, NEW YORK.

(Supreme Court, Appellate Division, Third Department. September 17, 1908.)

1. MASTER AND SERVANT—REGULATIONS OF EMPLOYMENT—FAILURE TO PROMULGATE RULES—NEGLIGENCE.

Whether a company engaged in producing and transmitting electric light and power was negligent in not promulgating a rule that when an employé was repairing its lines the current should not be turned on until the engineer in charge of the power house had received notice that the employé had completed his work and was out of danger was for the jury, though there was no evidence of such a rule in any similar business.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1036-1039.]

2. SAME.

Where, in an action against a master for the death of a lineman while repairing an electric wire, it appeared that it was customary for a lineman, on reaching the place where repairs were to be made, to notify the power house by a public telephone not controlled by the employer that he was ready to make the repairs and that the current was then turned off the line, that the message sent by the employé to shut off the current "in" 10 minutes was erroneously received at the power house as to shut it off "for" 10 minutes, and that in consequence thereof the employé was killed by an electric current, the jury could find that the employer, by failing to promulgate a rule that, when an employé was repairing its lines, the current should not be again turned on until the engineer was notified that the employé had completed the work and was out of danger, was guilty of actionable negligence, for with such a rule the misunderstanding in receiving the message at the power house would have resulted in no harm.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 969.]

3. SAME—INSTRUCTIONS.

An instruction, in an action for the death of a lineman while repairing an electric wire, submitting to the jury the questions whether the employer was negligent in failing to promulgate a rule as to the turning off and on of the current while employés were "repairing the lines," and also in not promulgating a rule that, when an employé was repairing a line, the current should not be turned on until the engineer had received notice that the employé had completed his work and was out of danger, was erroneous, as permitting the jury to base a finding of negligence on the nonexistence of a rule with respect to turning on the current merely while the employés were "repairing the lines," though such rule amounted to a rule that an employé should not do an act which would necessarily injure another employé, being something no employé would do, so that the master was not bound to make such an unnecessary rule.

Kellogg, J., dissenting.

Appeal from Trial Term, Broome County.

Action by Susie L. Van Alstine and another, as administrators of Orson A. Van Alstine, deceased, against the Standard Light, Heat & Power Company of Unadilla. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted. ·

See, also, 116 App. Div. 100, 101 N. Y. Supp. 696.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Millard & Stewart (Frank Stewart, of counsel), for appellant.
William F. Van Cleve, for respondents.

COCHRANE, J.   This is an action for negligence resulting in the death of plaintiffs' intestate. The defendant is engaged in the business of manufacturing and selling electric light and power in Unadilla, Sidney, and Bainbridge, Chenango county, N. Y. The two latter places are several miles from each other. The defendant's power house is about one mile from Sidney, and not in the same direction therefrom as Bainbridge. The electric current is transmitted from the power house to the several places mentioned by means of lines of wires maintained by defendant. The deceased was employed by the defendant as a lineman. At the time of the accident he had been sent to Bainbridge to repair one of the lines. The custom in such

cases was .that, when the lineman reached the place where repairs were .to be made, he notified the power house by means of a public telephone not controlled or operated by defendant that he was in readiness to make the repairs, and the current was then turned off of the line in question.

On the occasion in question the telephone wires were not working properly, and communication could not be established directly between Bainbridge and the power house. There were three persons concerned in the transmission of the message from the deceased at Bainbridge to the power house, and no two of these persons agree in their testimony. The first witness is the telephone operator at Bainbridge, who talked for the deceased and in his presence. After vainly attempting to communicate directly with the power house, he procured the operator at the central office in Sidney to repeat the message to the power house. The telephone line passed through this central office in Sidney. His testimony is that the message he gave to the operator at Sidney was that the current .should not be shut off in 10 minutes, but then it should be shut off for a definite time, the length of which he did not remember at the time of the trial, and that this message was repeated back to him in the same form from Sidney. The reason for not wanting the current shut off in 10 minutes was that the company in whose interest the line was to be repaired wanted to complete some work before it was turned off. The operator at Sidney testifies that the message received from Bainbridge, and which was transmitted to the power house, was that the current should be shut off in 10 minutes. According to her testimony nothing was said to or by her as to the length of time the current should be kept off. There was no difficulty in communicating between Bainbridge and Sidney, but the difficulty existed between the latter place and the power house. The operator at Sidney says she had difficulty in making the man at the power house understand. The third witness concerned in the transmission of this fatal message was the engineer at the power house. He says that the message as understood by him was that the current should be shut off "for" 10 minutes; that his custom was to keep it off 5 minutes longer than requested; that he did so in this instance, and after 15 minutes turned on the current. At this time Van Alstine was at work on the wire and received the charge of electricity resulting in his death.

No rules had been promulgated by the defendant in the operation of its business. The question of defendant's negligence was submitted to the jury by the learned trial justice in the following language:

"Now, as to the alleged negligence of the defendant, the only question which I shall submit to you in this case is, was the defendant negligent in not making and promulgating a rule for the government of its employés with respect to the turning off and on of the electric current while its employés were engaged in repairing its lines."

Again, the court said to the jury:

"Now, the plaintiff in this case claims that the defendant was negligent in not promulgating a rule to the effect that when one of its employés was engaged in repairing its lines that the current should not be again turned on until the engineer in charge of the power house had received notice that the

employé had completed his work and left the line and was out of danger; and, gentlemen, that is the first question which you will consider in this case."

In my opinion the latter of the above propositions was properly submitted to the jury, and it was fairly within their province to determine that in the exercise of ordinary care and prudence the defendant should have promulgated such a rule. Although there was no evidence of such a rule in any similar business, nevertheless the danger was so plain and obvious, and the consequences of a mistake so serious, that the jury might well find the necessity or propriety of such a rule, without evidence of its existence in other cases. Freemont v. Boston & Maine Railroad Company, 111 App. Div. 831, 98 N. Y. Supp. 179; Eastwood v. Retsof Mining Company, 86 Hun, 91, 34 N. Y. Supp. 196, affirmed 152 N. Y. 651, 47 N. E. 1106; Burns v. Palmer, 107 App. Div. 321, 95 N. Y. Supp. 161; Berrigan v. New York, Lake Erie & Western Railroad Company, 131 N. Y. 582, 585, 30 N. E. 57.

It is quite clear that such a rule would have been practicable and enforceable, and the effect thereof would have been to prevent the engineer in charge at the power house from attempting to use his own judgment as to whether or not the man repairing the lines was out of peril. Even the latter could not determine in advance the exact time it would require for the performance of the work. In Eastwood v. Retsof Mining Company, supra, it was said:

"Where the circumstances are such that any person can see what might happen in a given case, and the danger is plain and obvious, the jurors might be at liberty to infer that rules to protect the employés were necessary, although they had no experience in the particular business, and although there was no evidence that other corporations in the same business had made rules for such cases."

In the case of McCoy v. New York Central & Hudson River Railroad Company, 185 N. Y. 276, 77 N. E. 1174, the circumstances were that two men, a hostler and a hoer, were engaged in removing ashes from an engine. The duty of the hostler was to shake down the ashes into the ash-pan and remain in the cab until the work was completed. The hoer got under the engine and hoed out the ashes as the hostler shook them down. While engaged in the performance of these duties the hostler started the engine before the hoer had reached a place of safety from beneath the engine, and the latter was injured. The court said:

"In view of the great peril surrounding this work, a rule promulgated by the company might well be printed among its general rules requiring the hoer to reach a place of safety in sight of the hostler."

The judgment dismissing the complaint was reversed.

If such a rule was deemed proper in that case, where the two workmen were in the immediate vicinity of each other and it was comparatively easy for the one to ascertain the whereabouts of the other, it would seem a fortiori that a similar rule might well have been adopted in the present case, where the two workmen were separated by a distance of miles, and it was impossible for the man in charge of the

fatal current to ascertain whether his fellow servant was out of danger, except in the way indicated by such a rule.

It is said, however, that the deceased controlled the situation, and that the message which he sent from Bainbridge to the power house directed that the current should be kept off for a fixed time, and that such direction was obeyed. This argument ignores the testimony of the telephone operator at Sidney, who testifies in effect that no such message was received by her or transmitted by her to the power house; and the operator at Bainbridge is by no means clear or convincing in his statement that the current was to be kept off for a fixed time.

Again, it is urged that there was a misunderstanding in receiving the message, and that the engineer at the power house faithfully obeyed the message as he understood it. In the first place, the engineer is an interested witness for the defendant, and the jury were at liberty to disregard his testimony. But, moreover, with such a rule in force as above indicated, it would have been his duty to obey the instructions of his employer, as promulgated to him through the rule, in preference to any message which might have come to him over the telephone line from a fellow servant. With such a rule a misunderstanding such as the defendant here relies on would have resulted in no harm, unless the enginer had disobeyed the rule, in which case the defendant would not have been liable.

It is impossible, however, to sustain this judgment. The two propositions above quoted from the charge of the court to the jury are widely different in their scope and purport. The first proposition concerns a rule with respect to turning on the current while the employés were engaged in repairing the lines. The other formulates a rule that the current shall not be turned on until after notice had been received that the employé had completed his work and left the line. Now, it is apparent that a rule couched in the language of the first proposition would be useless. Moreover, it would be unnecessary. The engineer did not need a rule requiring him not to kill or injure a fellow servant. A rule in accordance with that proposition would simply be a rule that an employé should not do an act which would necessarily injure another employé, and the master is not bound to promulgate such a rule. Austin v. Fisher Tanning Company, 96 App. Div. 550, 89 N. Y. Supp. 137; Ehrenfried v. Lackawanna Iron & Steel Company, 89 App. Div. 130, 85 N. Y. Supp. 57.

It is probable that the learned trial justice, in enunciating the first proposition, was merely in a general way directing the minds of the jury to the ground of negligence which he was about to submit to them for their consideration, and which in the second proposition he elucidated with more particularity and detail. But at the close of his main charge he declined to charge at request of defendant:

"That no negligence can be predicated upon the failure to promulgate a rule that the power should not be turned on while a lineman was working on the lines, as an employer is not obliged to promulgate a rule forbidding his employés from doing an act which would necessarily and obviously result in injury to another employé."

Thus the question was squarely raised, and the distinction pointedly called to the attention of the court. The failure of the trial justice to

charge this proposition as requested was doubtless an inadvertence, but it permitted the jury to base their verdict on the nonexistence of a rule which defendant was not bound to promulgate.

For this reason the judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except KELLOGG, J., who dissents.