[3] The facts attempted to be proven by him were, however, purely cumulative. The claimed existence of this right of way was testified to by other witnesses and shown in other ways. Giving to that evidence all the force which can be claimed for it, and all the effect which it could have if substantiated by this excluded evidence of Mr. Blass, would in no manner alter or modify the situation as it was presented. The facts remain that defendant committed an assault upon plaintiff; that the jury were justified in finding from the evidence that no actual damage resulted; and that plaintiff having deliberately invited that assault was not entitled to punitive damages. The only harm which has come to plaintiff by the verdict is by the imposition upon him of the costs of the action. If he be relieved from this burden, there will be no justification for directing a new trial to enable him to recover nominal damages.

The motion is therefore granted, the verdict set aside, and a new trial directed, unless defendant shall within 10 days after service of the order hereon waive by stipulation in writing all costs and taxable disbursements of the action, and consent to entry of judgment on this verdict without costs. If such stipulation be filed, the motion is denied. No costs.

Order may be entered in accordance with the foregoing.
Ordered accordingly.

---

### JUDD v. LAKE SHORE & M. S. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. January 15, 1913.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—JUDGMENT—NONSUIT.

On appeal from a judgment of nonsuit, plaintiff is entitled to the benefit of all reasonable inferences from the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

2. MASTER AND SERVANT (§ 141*)—NEGLIGENCE.

Where decedent's yardmaster directed him to get certain cars from switch No. 3, it was negligence to also order another engine to work on the switch from the other end without promulgating rules to govern such joint use of the switch by different train crews.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*]

3. MASTER AND SERVANT (§ 286*)—INJURIES—JURY QUESTION—NEGLIGENCE.

In an action for a yard brakeman's death by being crushed between cars as a result of two engines operating on the same switch, whether it was negligent to so operate the trains without special rules relating to such operation for the protection of employés *held* a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033; 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 288*)—INJURIES—JURY QUESTION—CONTRIBUTORY NEGLIGENCE.

In an action for a yard brakeman's death by being crushed between cars while two engines were switching on the same switch, whether

decedent assumed the risk of injury from two engines operating at the same time *held* a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088;  Dec. Dig. § 288.*]

5. MASTER AND SERVANT (§ 289*)—INJURIES—JURY QUESTION—CONTRIBUTORY NEGLIGENCE.

In an action for a yard brakeman's death by being caught between cars while his own and another engine were both switching on the same switch, whether decedent was guilty of contributory negligence *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132;  Dec. Dig. § 289.*]

Appeal from Trial Term, Erie County.

Action by Maybelle A. Judd, as administratrix, against the Lake Shore & Michigan Southern Railway Company.  From a judgment dismissing the complaint, and an order denying a motion for new trial, plaintiff appeals.  Reversed, and new trial granted.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Philip A. Laing, of Buffalo, for appellant.

Thomas D. Powell, of Buffalo, for respondent.

McLENNAN, P. J.   Upon the trial the plaintiff sought to show that this action is maintainable under the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204), but, inasmuch as it was stipulated that the action was commenced on the 24th day of November, 1910, that the accident occurred on the 11th day of August, 1909, and that plaintiff was appointed administratrix on the 18th day of September, 1909, this contention is clearly wrong, because the Employer's Liability Act provides that an action brought under the provisions of that act must be commenced within one year from the happening of the accident causing the injury.

[1]  There is practically no dispute in the evidence, and, a nonsuit having been granted, the plaintiff is entitled to the benefit of all reasonable inferences which may be drawn from such evidence.  At the time of the accident, which occurred between 10 and 11 o'clock of the night of the 11th day of August, 1909, plaintiff's intestate was in defendant's employ as brakeman, and was engaged in the performance of his duties as such in the defendant's freightyards in the city of Buffalo.  He had worked in such yards for a period of about two years prior to the accident.  The yard in question is called in the evidence the Scott street yard in Buffalo.  Such yard consisted, first, of an eastbound main track and, second, immediately south of it of a west-bound main track, and south of it six side tracks, all of such tracks being practically parallel and running in an easterly and westerly direction. The deceased was a member of a crew which was operating engine No. 4528.  The engine of such crew had been ordered shortly before the accident onto track No. 3, which meant to go east and to couple onto a string of cars standing on such track and take them to East Buffalo;  the order being given by the assistant yardmaster.  He also

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

gave the deceased the same instructions, telling him to go down and get the yard off from track No. 3, which meant that he should get upon track No. 3 certain cars that were on said track and take them to East Buffalo. While thus engaged, also by order of defendant's yardmaster, cars were being moved on track No. 3 by engine No. 4511 from the westerly end of such yard, and this operation by engine No. 4511 and the movement of cars by it upon such track was in no manner communicated to the deceased or any other member of the crew of engine No. 4528, with the result that the deceased was caught between two cars and killed.

[2] It would hardly seem necessary to recite the details of the movement of these respective engines. The crew of the engine of which the deceased was a member was proceeding from the east end of such yard on track No. 3 to do the work which such crew was directed to do, and without any knowledge or information on their part or the part of any of them that orders had been given to move cars on such track from the other end of the yard by engine No. 4511.

[3] We think that such method of doing business was dangerous in the extreme; that the exercise of ordinary care and prudence would have dictated to the defendant the promulgation and enforcement of a rule which would not have permitted cars to be moved on a switch track by two engine crews operating engines from each end of such yard on the same track without notifying the different crews that such operation was taking place.

This court has recently affirmed a verdict in favor of a plaintiff in a case brought to recover for the negligent killing of a railroad employé under very similar circumstances. Pendergast v. New York Central & Hudson River Railroad Co., 152 App. Div. 955, 137 N. Y. Supp. 1133, decided at the October Term, 1912. In that case the failure to promulgate a rule for the protection of the employés of the company working under such conditions was one of the principal grounds of negligence.

It is true that in the case at bar there is no evidence that other railroad corporations had made rules for such cases, nor was any witness called, experienced in railroad work, to show that such a rule was practicable under the conditions shown. We do think, however, that in this case such evidence was unnecessary. Such has been held to be the law where the danger is so obvious and the consequences so serious that a jury may find the necessity of such a rule without evidence of its existence in other cases. Van Alstine v. Standard Light, Heat & Power Co., 128 App. Div. 58, 112 N. Y. Supp. 416. And, again, in Bell v. New York Central & Hudson River Railroad Co., 128 App. Div. 730, 113 N. Y. Supp. 185, it was held that the necessity or propriety of a rule may be determined by a jury in the absence of its existence in other places only when the circumstances are such that the practicability of the rule is obvious to persons of ordinary understanding. See, also, Eastwood v. Retsof Mining Co., 86 Hun, 91, 34 N. Y. Supp. 196, affirmed 152 N. Y. 651, 47 N. E. 1106; Burns v. Palmer, 107 App. Div. 321, 95 N. Y. Supp. 161; Berrigan v. New York, Lake Erie & Western Railroad Co., 131 N. Y. 582, 585, 30 N. E. 57; Free-

mont v. Boston & Maine Railroad Co., 111 App. Div. 831, 98 N. Y. Supp. 179, affirmed 187 N. Y. 571, 80 N. E. 1109. It would seem to be perfectly obvious to a person of ordinary understanding that the operation of two switch engines from opposite directions upon the same track would be attended by great danger without the promulgation and enforcement of a proper rule for the protection of the employés engaged in the work, and that it was not necessary for the plaintiff to suggest or formulate such rule, nor to produce expert testimony as to the practicability of it in order to warrant the submission of the question to the jury.

[4] It is urged, however, by the respondent that plaintiff's intestate assumed the risk. As above stated, he had been employed in defendant's yard for about two years, for the first year as a switch tender, and for about a year before his death as a yard brakeman. I do not think that we should hold that plaintiff's intestate assumed the risk in this case as a matter of law, in view of the fact that the deceased was acting under the direction of the defendant's yardmaster and the assistant yardmaster, and might be found to have relied, as he had a right to do, upon their superintending the movements of the different engines in the yard in such manner as to protect him from injury.

[5] The only remaining question is whether or not there was any evidence which would justify the court in submitting to the jury the question of the intestate's freedom from contributory negligence. We think upon the evidence that the question was one of fact for the jury. Plaintiff's intestate was caught and crushed between the bumpers of two cars which he was trying to get coupled together, and was in a place where the jury might infer that he had a right, and might be expected to be, in the performance of his duties. We therefore conclude that the judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed and new trial granted, with costs to appellant to abide event. All concur.