## DOBLER v. CONRON BROS. CO.    (No. 6895.)

(Supreme Court, Appellate Division, First Department.    March 19, 1915.)

1. PLEADING ⬦⟹127—INJURY TO SERVANT—ANSWER—ADMISSIONS.

An allegation in an answer, in an action for injuries to an employé, that the accident was caused by the negligence of the employé or by the negligence of a fellow servant "in the service" of the employer "with" the plaintiff, is an admission of the employment.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 264–268; Dec. Dig. ⬦⟹127.]

2. MASTER AND SERVANT ⬦⟹277—INJURY TO SERVANT—EXISTENCE OF RELATION—EVIDENCE.

Evidence *held* to sustain a finding that an employé, suing for a personal injury, was in the employ of defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 953; Dec. Dig. ⬦⟹277.]

3. MASTER AND SERVANT ⬦⟹296—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

In an action for injuries to an employé by a fall into an elevator shaft, instructions that the employé could not recover, unless the accident happened as testified to by him, and which stated the law of contributory negligence, and in so doing alluded to the question of light by saying, "Was the light sufficient to enable the plaintiff, in the exercise of reasonable care, to see that the elevator had moved and that the gates were open, if such was the case?" and that to hold the employer guilty of negligence it was necessary to find that it neglected to do some act which in the exercise of reasonable care it should have done, submitted the question of light as bearing only on the employé's guilt of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. ⬦⟹296.]

4. MASTER AND SERVANT ⬦⟹289—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

An employé moved a freight elevator so as to enter it. From the time he brought the elevator to the floor until he stepped into the shaft, thinking the elevator was still there, only about ten seconds elapsed. The gates rose and closed automatically as the elevator ascended or descended. When he stepped into the shaft he could not see whether the elevator was there. After the accident, the elevator was found at the top floor, but it was not shown who pulled the cable to send it there. *Held*, that the employé was not, as a matter of law, guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ⬦⟹289.]

5. MASTER AND SERVANT ⬦⟹141—INJURY TO SERVANT—NEGLIGENCE.

Failure of an employer to make any rule as to the use of an elevator, so that it was left with his knowledge and acquiescence to be used in a dangerous manner, justified a finding of actionable negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. ⬦⟹141.]

6. APPEAL AND ERROR ⬦⟹930—VERDICT—INSTRUCTIONS—PRESUMPTIONS.

It must be presumed that the jury followed the instructions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. ⬦⟹930.]

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. APPEAL AND ERROR ⬪216 — OBJECTIONS AT TRIAL—INSTRUCTIONS — RE-
    QUESTS—NECESSITY.
        Where the court, in submitting an action for injuries to an employé,
    charged that the employé could not recover unless the accident hap-
    pened as testified to by him, the employer, failing to request any instruc-
    tion as to a more definite specification of the theory of his negligence,
    could not complain of the failure to so charge.
        [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⬪216;
    Trial, Cent. Dig. § 627.]

Appeal from Trial Term, New York County.

Action by Charles Dobler against the Conron Bros. Company. From
a judgment for plaintiff, and from an order denying a new trial, de-
fendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, DOWLING, and HOTCHKISS, JJ.

Frederick W. Catlin, of New York City (Robert H. Woody, of New
York City, on the brief), for appellant.

Joseph A. Shay, of New York City (Nash Rockwood, of New York
City, of counsel), for respondent.

LAUGHLIN, J.   On the 17th day of January, 1914, the plaintiff
was very severely injured by falling into a freight elevator shaft from
the third floor of the defendant's five-story building at the northeast-
erly corner of Tenth avenue and Thirteenth street, borough of Man-
hattan, New York; and he has recovered a large verdict, but it is not
claimed that it is excessive. The plaintiff alleged that he was in the
employ of the defendant at the time of the accident, and the recovery
was had on that theory. It is contended in behalf of the appellant
that the plaintiff was not in its employ, but was in the employ of the
Riverside Cold Storage Company, a corporation incorporated on the
18th day of April, 1901, for the period of *ten* years.

[1, 2] The employment of the plaintiff at this place commenced in
the month of November before the accident, which was *after* the ex-
piration of the corporate life of the Riverside Company. The only
denial in the answer, which was verified by John E. Conron, who was
the treasurer of the defendant, of the allegation that the plaintiff was
in the employ of the defendant, is a denial that the defendant had any
knowledge or information sufficient to form a belief with respect there-
to. The answer in the first defense alleges that the accident was
caused or contributed to by negligence on the part of the plaintiff, or
by the negligence of a fellow servant or fellow servants "in the serv-
ice" of the defendant "with the said plaintiff." No point appears to
have been taken with respect to the sufficiency of the denial of plain-
tiff's employment by the defendant; but during the trial counsel for
plaintiff claimed that the affirmative allegation with respect to the
negligence of a fellow servant in the employ of the defendant with
the plaintiff was an admission of his employment by defendant. Coun-
sel for defendant then requested leave to amend by withdrawing the
admission, or leave to withdraw a juror and to apply at Special Term
for that relief. The motion was denied, and the court ruled that the
admission was some evidence, but not conclusive, that plaintiff was

in the employ of the defendant. The discretion of the court in denying the motions is not presented for review. The ruling of the court with respect to the effect of the affirmative allegation on this point in the answer is sustained by authority. Talbot v. Laubheim, 188 N. Y. 421, 81 N. E. 163; Kraus v. Birnbaum, 200 N. Y. 130, 137, 93 N. E. 474; Young v. Katz, 22 App. Div. 542, 48 N. Y. Supp. 187. And if the denial of plaintiff's employment by the defendant is not wholly bad (see Dahlstrom v. Gemunder, 198 N. Y. 449, 92 N. E. 106, 19 Ann. Cas. 771; Harley v. Plant, 210 N. Y. 405, 104 N. E. 946; Kirschbaum v. Eschmann, 205 N. Y. 127, 98 N. E. 328), it also should be taken into consideration in determining the question of fact, for the officer of the defendant, who verified the answer, and his brother, Joseph Conron, who is the president of defendant, organized the Riverside Company, and at the outset owned all of its capital stock, with the exception of 4 shares, 2 of which they evidently had issued to their attorney to qualify him as a director, and the other 2 shares were issued to one Nash and one Fitzgerald, respectively, who subsequently became officers of the defendant, and the Conrons now own a controlling interest in the Riverside Company, and it is to be inferred that they were the principal stockholders of the defendant, which was incorporated in the year 1902, to take over their copartnership business. It appears that the defendant has 21 stockholders, and that the 5 stockholders of the Riverside Company are stockholders of the defendant. At the organization of the Riverside Company, both Conrons became directors of it; but neither of them had been an officer of that company for about seven years prior to the trial. John E. Conron, after testifying that the Riverside Company was incorporated with a capital of $5,000, and the defendant with a capital of $500,000, was asked, "Q. Have you any other small companies?" and he answered, "A. Yes; eight more."

The business conducted by the Riverside Company was the transmission of refrigeration through pipes to customers in the vicinity of its plant, which for some years prior to the accident was in the three-story building owned by the defendant on Thirteenth street, adjoining the corner building in which the elevator was located, which was occupied by it as a meat market, including dealing in game, poultry, butter, and eggs. The services performed by the plaintiff were in connection with the refrigeration, and his position was designated pipe fitter. Some of these services were performed in that part of the premises occupied by the defendant, which was furnished with refrigeration from the Riverside Company's plant. There was a passageway from the second floor of the low building occupied by the Riverside Company to the five-story building, the third floor of which was three steps above the second floor of the low building. The president of the Riverside Company, who was also the financial agent of the defendant, testified that the Riverside Company had two coolers in the high building, and leased the use of the elevator from the defendant, but that the elevator was used by the employés of both companies. He also testified that the refrigeration plant was owned by the defendant, and that the Riverside Company was paying it $1,000

a month rental for the use of the plant, and charging it $500 a month for refrigeration.  John E. Conron testified that the lease, which was not produced, was made to the Riverside Company some nine years before the trial, and he did not know whether or not it was in writing, or whether the books would show it, but that he thought it was on the books.  The refrigeration business was conducted in the name of the Riverside Company, and a separate account thereof was kept, including a pay roll, on which the name of the plaintiff appeared. The Conron Bros., however, exercised to a certain extent, general charge and supervision over both companies, and gave orders to the employés, and assumed to and did regulate the hours of employment of the employés of the Riverside Company.  It would seem that the employés engaged in the refrigeration business did not know for whom they were working.  The money for the pay roll of the Riverside Company was advanced by the defendant.  One Carrigan, the engineer of the refrigeration plant, testified that he was in the employ of the Riverside Company; but his employment commenced long before the expiration of the corporate life of that company, and his certificate or license as an engineer, from the police department, authorized him to take charge of and operate the boiler in the refrigeration plant for the Conron Bros., and a like certificate, obtained by him for the transfer of a license of an assistant engineer, was to the same effect.

Upon all of this evidence, including the answer, the court submitted the question to the jury as one of fact as to whether the plaintiff was in the employ of the defendant, and instructed them that, if he was not, there could be no recovery.  We are of opinion that that was a fair question of fact, and that the verdict thereon is sustained by the evidence.  The negligence charged was the use of defective gates for the elevator shaft, and with respect to the system by which the elevator was permitted to be used by the employés of both buildings by taking it wherever they found it, and if not at the floor where they desired to use it, by bringing it from another floor, above or below, by pulling the cable.  It was a freight elevator, and no one was assigned to operate it.  There was an entrance to it from Thirteenth street, and it was accessible from each floor of the high building; but access to it from the low building could be had only through the passageway already described.  On the day of the accident, the plaintiff was engaged in picking up material on the third floor of the low building, and he was directed by his foreman to take the elevator and go to the fifth floor of the high building and there obtain a barrel, into which to put the material.  He descended to the second floor and passed through the opening between the buildings, and up the three steps into a large room on the third floor of the high building, into which the elevator shaft opened toward the west.  At this floor the opening into the elevator shaft was guarded by two gates, one above the other, with a space of about 1½ feet between them; the top of the lower gate being about 35 inches above the floor.  These gates rose and closed automatically, as the elevator ascended or descended.  When the plaintiff came to the elevator shaft, he saw by the position of the

cables, on which light was thrown from above, that the elevator was below, and he shouted down the shaft, "Look out! elevator," and after waiting a few seconds and hearing no response, he crouched down and reached through the opening between the gates and pulled the cable down, which brought the elevator up, and as it came up the lower gate rose as it should and came in contact with the upper gate, raising it also.

The plaintiff testified that when the elevator reached the floor where he was, he checked it by pulling on the cable, and brought it to a stop with the gates suspended above; that he then heard a voice nearby, which he took to be calling him, and he turned and looked into the passageway through which he had come, thinking that some one in the ice tank room on the second floor of the low building was calling to him; but, seeing no one, he then turned and looked down the stairs, which evidently descended at the side of the elevator shaft to the second floor of the high building; that he had not moved more than two feet from the position he occupied when he brought the elevator to a stop at that floor, and, thinking that the elevator was still there, he stepped into the open shaft and fell, sustaining the injuries for which he has recovered; that the gates had remained up, and that he had not heard or seen the elevator move, and that the elevator shaft was so dark that, when he turned and stepped into it, he could not see whether or not the elevator was there; and he explained his ability to see the floor of the elevator when it came up, on the ground that light was then admitted through the open door below, and that in the meantime the door must have been closed. After the accident, the elevator was found at the top floor; but it was not shown who pulled the cable to take or send it there. There is testimony—not, however, wholly incompetent—tending to show that the lower gate was found down in its proper place, after the accident; but the uncontroverted evidence shows that the upper gate was about half a foot above its proper position, and was jammed in the grooves in which it ran; one end being a few inches higher than the other. There was no eyewitness to the accident, other than the plaintiff; and the defendant made no attempt to call its employés to show that none of them pulled the cable, which could have been pulled from any floor. There was. no evidence that the gate ever·became wedged or jammed before; but the foreman carpenter of the defendant testified that there had been trouble with the gates, and is trouble with the gates of all elevators, when the ropes by which they are operated are worn or cut; but there was no evidence that such a condition existed at the time of the accident. After the plaintiff had testified with respect to the lack of light, and at a noon recess during the trial, which was in the month of·June, on the suggestion of counsel for the defendant, the jurors were permitted to inspect the scene of the accident.

[3] The court, in submitting the case to the jury, instructed them that the plaintiff could not recover unless the accident happened in the precise manner testified to by him, but with this exception gave no specific instruction with respect to negligence depending on the manner in which the elevator was permitted to be operated. The court

charged at length on the subject of the plaintiff's contributory negligence, and in so doing alluded to the question of light by saying:

"Was the light sufficient to enable the plaintiff, in the exercise of reasonable care, to see that the elevator had moved and that the gates were open, if such was the case?"

There was no specific charge in the complaint, predicating negligence on the failure of the defendant to have the elevator shaft properly lighted. It is claimed by counsel for the appellant in his reply brief that the charge only permitted the jury to predicate negligence on defendant's failure properly to light the shaft. In this, however, I think he is in error. The court charged generally that to hold the defendant guilty of negligence it was necessary for the jury to find that it "neglected to do some act or thing which in the exercise of reasonable care and prudence, it should have done." There was no exception to the charge. I am of opinion that the question of light was submitted to the jury as bearing only on the question of plaintiff's freedom from contributory negligence.

The court, at the request of counsel for the defendant at the close of the charge, instructed the jury that, if the light was sufficient to enable plaintiff in the exercise of reasonable care to discover that the elevator had been moved, the plaintiff was not entitled to recover. Counsel for appellant in effect claims that by acquiescence the case was submitted on the theory of negligence with respect to light. Defendant evidently had no objection to the charge of negligence being extended to the failure properly to light, but I think the court did not so limit it. A notice was served under the Employers' Liability Act; but the court, in submitting the case to the jury, disregarded it, and charged that the burden of proof was on the plaintiff with respect to freedom from contributory negligence; and while that must be deemed to be the law of the case in reviewing the verdict of the jury, it is to be borne in mind that it was more favorable than the defendant was entitled to have them instructed.

[4] The appellant also contends that the finding that the light was insufficient to enable the plaintiff in the exercise of reasonable care to discover that the elevator had been moved is against the weight of the evidence, and that, if it was insufficient, then plaintiff was guilty of contributory negligence as matter of law in stepping into the elevator shaft without ascertaining whether the elevator had been moved. According to the testimony of the plaintiff, only about ten seconds elapsed from the time he brought the elevator to the floor until he stepped into the shaft thinking the elevator was still there. We are of opinion that it could not be held as matter of law that he was guilty of contributory negligence in the circumstances; and in view of the fact that the jury at the request of the defendant saw the conditions on a day presumably brighter, for the accident happened in the winter and on a day when it was foggy and raining or snowing, it cannot now be said that the verdict is against the weight of the evidence on the question of light, although, if the jury had not viewed the premises, there would be room for argument on the question as to whether the evidence on that point preponderates in favor of the plaintiff.

[5] The evidence showed that the defendant failed to make any rule or regulation with respect to the use of the elevator, so that it was left, with the knowledge and acquiescence of the defendant, to be used in this dangerous manner, which was sufficient to warrant the jury in charging the defendant with negligence. Knickerbocker v. General Ry. Signal Co., 209 N. Y. 404, 103 N. E. 765; Judd v. L. S. & M. S. R. R. Co., 155 App. Div. 1, 139 N. Y. Supp. 542.

[6] It must be presumed that the jury followed the charge, and found that the accident happened precisely as claimed by the plaintiff, and, if so, they were at liberty to find, not only that the plaintiff was free from negligence, but that the defendant was guilty of negligence in permitting the elevator to be so operated without any rule or regulation, in view of all the conditions with respect to light and the danger of accidents.

[7] The defendant failed to request any instruction with respect to a more definite specification of the theory on which the defendant could be held to be negligent, and is therefore not in a position to insist that it was limited to light.

It follows that the judgment and order should be affirmed, with costs. All concur.