frauding the other creditors of the bankrupt. The findings of fact are amply supported by the evidence, and we find no exceptions in the record justifying a reversal of the judgment.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

---

## BANCHETTI v. GORSLINE & SWAN CONST. CO.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—EVIDENCE—NEGLI-
GENCE OF MASTER—DANGEROUS MACHINERY OR PLACE OF WORK.

Evidence in an action for injuries to a servant resulting in death *held* not to show that the master was negligent in failing to provide the servant with a reasonably safe place in which to work, or in failing to have the ways and machinery in proper repair.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 279*)—INJURIES TO SERVANT—SUFFICIENCY OF EV-
IDENCE—EMPLOYMENT OF INCOMPETENT FOREMAN.

Evidence in an action for injuries to a servant *held* not to show that the master was negligent in putting an incompetent foreman in charge of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

3. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—QUESTION FOR JURY
—RULES AND ORDERS.

In an action against a building contractor for the death of a servant, the evidence showed that it was practicable to provide against the occurrence of the accident in question by a rule, but did not show that other contractors had any rule in force to prevent such accidents. *Held*, that the question whether defendant was guilty of actionable negligence in failing to promulgate and enforce such a rule was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

Robson and Foote, JJ., dissenting.

Action by Giovanni Banchetti as administrator, etc., of Antonio Dilitta, deceased, against the Gorsline & Swan Construction Company. Motion by plaintiff for a new trial upon exceptions ordered heard in the first instance by the Appellate Division. After a nonsuit granted at the close of plaintiff's evidence at the Trial Term of the Supreme Court, held in and for the county of Monroe in April, 1911. Exceptions sustained, and motion for new trial granted.

The action was commenced on the 13th day of January, 1910, to recover damages resulting from the death of plaintiff's intestate which occurred on the 28th day of August, 1909, while in defendant's employ, engaged with other employés in building a stone tower or steeple upon a church situate on Franklin street in the city of Rochester; it being alleged that such death was caused solely through the negligence of the defendant. Notice was served upon the defendant pursuant to article 14 of the Labor Law. The grounds of negligence, as stated in said notice and as alleged in the complaint, were, in substance, that the defendant did not furnish the plaintiff's intestate a reasonably safe place in which to work; that it failed to make,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

publish, and enforce rules and regulations which were reasonably necessary to protect the deceased against accident in the prosecution of his work; that the defendant had selected and put in charge of the work an incompetent superintendent, and that the accident resulted from his incompetence and neglect in giving proper instructions in the prosecution of the work, and that the method employed of doing the work was unsafe and needlessly dangerous. The defendant by its answer denied all the allegations of negligence charged against it, and affirmatively alleged that the deceased assumed the risk, and that the death of plaintiff's intestate was caused by his own negligence and fault.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

George F. Slocum, of Rochester, for the motion.
George D. Reed, of Rochester, opposed.

McLENNAN, P. J. The defendant is a domestic corporation, and at the time of the accident which is the subject of this litigation was engaged in building a stone tower or steeple upon St. Joseph's Church on Franklin street, in the city of Rochester, N. Y. Franklin street extends east and west, and the church in question is located on the northerly side of such street facing to the south. The tower was being erected on the easterly side of the church. It was about 20 feet square, and was being built of heavy stones, some of them weighing between 750 and 800 pounds. At the time of the accident the tower had been built to a height of about 125 feet from the ground. A scaffolding was constructed inside of the tower; sections being added to it as the work of placing the stones in the tower progressed. Such scaffold was planked over at the top, making a platform, which practically covered the entire space inside of the tower, upon which the men worked and stones were deposited, and at the time of the accident the platform was about 18 inches above the level of the wall of the tower. Another scaffold had been erected near the tower surmounted by a platform about 12 or 15 feet above the top of the tower which was being constructed. On such platform rested a derrick, used for the purpose of hoisting stones from the street to the top of the tower. The mast of the derrick was 16 feet high and the length of the boom was 24 feet. The derrick was connected by means of a cable with the hoisting engine, which was located on the ground. An electric signal system had been installed by means of which the man in charge of the derrick directed the engineer when to start and stop the engine. The foreman of the men during the work in question had full control and direction of their actions. He directed each as to what to do and how to do it. He gave directions as to which particular stone should be raised from the ground to the top of the tower, where it should be placed, whether directly on the wall of the tower or upon the scaffold inside of the same, and an express rule was promulgated and in force that no stone should be raised except upon the order of such foreman communicated to the signalman, who, in turn, gave the signal to the engineer on the ground below to start the engine, and, when the stone reached the place desired by the foreman, upon his direction, the signalman signaled the engineer to stop

the engine.   It appears, however, without contradiction, that, when a stone was raised and lowered to its place on the wall or on the scaffold in the tower as directed by the foreman and the engine was stopped, there would invariably be several feet of slack in the cable, and it was deemed desirable that such slack should be immediately taken up, and the signalman was permitted, upon his own motion, to signal the engineer to again start the engine for that purpose without any direction from the foreman, and without giving any warning to the men working on the wall of the tower.

At the time of the accident a large, heavy stone, somewhat irregular in shape, had been by direction of the foreman to the signalman, who, in turn, signaled the engineer to start the engine, raised from the ground to the top of the tower, and placed on the scaffold, and allowed to remain there while the derrick was being used to move another stone at the top of the tower.  When the men had put the other stone in position on the wall, the coemployés of the deceased commenced to make ready to place the stone lying on the scaffold in its final and proper place in the wall, on the corner of the tower. But, as we have seen, there were several feet of slack in the cable, and the signalman, upon his own motion, as he was accustomed to do, gave the signal to the engineer to again start the engine, which he did.  The slack was taken up and the signal to again stop the engine was not given in time, or it was not immediately obeyed by the engineer, so that the stone was raised from the scaffold without the knowledge of the foreman or the men working under him, including the deceased, with the result that the stone swung to where the deceased was working, and either brushed him from the wall or came in such close proximity to him that, in attempting to save himself from being struck, he lost his balance and fell from the wall, which caused his death.  The deceased at the time was on the wall, crouched upon his knees, scraping some mortar from the top of a stone upon which the stone in question was to rest.  He was doing the work precisely in the manner directed by the foreman, and had no knowledge that the stone in question was being or was about to be moved.  He was in a place of safety except for the unexpected moving of the stone.

[1, 2] We think that upon the evidence there is no basis for plaintiff's claim that defendant was chargeable with negligence because it failed to provide plaintiff's intestate with a reasonably safe place in which to work or because the foreman who had charge of the work in question was incompetent or negligent.  Neither is there any ground for a charge of negligence because the works, ways, and machinery were not in proper repair.  All the machinery and appliances were practically new, were of the best known pattern, and were in perfect repair.

[3] We conclude, however, that the evidence presented a question of fact for the jury as to whether or not the defendant was guilty of actionable negligence in failing to promulgate and enforce a rule, in effect, that the hoisting engine should not be started in connection with any work upon the tower either for the purpose of taking up the slack of the cable or for any other purpose except by the direction

of the foreman, after proper warning had been given to the men working on the tower that such engine was to be started.

The undisputed facts demonstrate the necessity for the promulgation and enforcement of such a rule. A stone is hoisted to the wall or scaffold by direction of the foreman. He and the men under him see that it is at rest, that the engine has stopped, and they proceed to make ready to put it in the place where it is to be finally laid. Without warning, without any direction by the foreman who has set all the men to work at their respective tasks, the signalman, who is stationed on a platform 12 or 15 feet above where the men are working, assumes to direct the engineer to again start the engine, as it is said, for the purpose of taking up the slack of the cable. It is perfectly apparent that after the slack was taken up, if the cable moved another inch, the stone would swing clear from the place in which it was resting, and, there being no one to guide or give it attention, that it was liable to swing out and come in contact with the men.

There was no evidence in this case to show that a rule of similar character to the one suggested was in use by other corporations of the same class carrying on like operations. It was, however, shown by the evidence that it was reasonable and practicable to provide against the occurrence of such an accident by a rule similar to the one suggested. In the case of Eastwood v. Retsof Mining Co., 86 Hun, 91, 98, 34 N. Y. Supp. 196, 199, affirmed 152 N. Y. 651, 47 N. E. 1106, it was said:

"Where the circumstances are such that any person can see what might happen in a given case, and the danger is plain and obvious, the jurors might be at liberty to infer that rules to protect the employés were necessary, although they had no experience in the particular business and although there was no evidence that other corporations in the same business had made rules for such cases."

This rule was recognized by the Court of Appeals in Berrigan v. N. Y., L. E. & W. R. R. Co., 131 N. Y. 582, 30 N. E. 57.

We conclude that the plaintiff's exceptions should be sustained and the motion for a new trial granted, with costs to the plaintiff to abide the event.

Plaintiff's exceptions sustained, and motion for new trial granted, with costs to plaintiff to abide event. All concur, except ROBSON, J., and FOOTE, J., who dissent.