(159 App. Div. 155.)

### NOWAK v. DELANEY FORGE & IRON CO.

(Supreme Court, Appellate Division, Fourth Department. November 19, 1913.)

1. APPEAL AND ERROR (§ 927*)—APPEAL FROM NONSUIT—PRESUMPTIONS.

On appeal from a judgment of nonsuit, every permissible inference is to be resolved in favor of plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

2. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—SAFE PLACE TO WORK.

Where an employé was injured while working at a revolving drum carrying a cable used to draw a railway car up an incline, and the accident was due to the car wheels cutting through blocks of wood placed beneath them to prevent the car backing down the grade after the cable was loosened and to plaintiff's leg becoming caught in the cable, and not in any way to the pulling of the car up the grade, he could not recover upon the theory of the employer's failure to furnish him a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 141*)—DUTY OF MASTER—PROMULGATION OF RULES.

Where the work of one employé affects the safety of others, and the dangerous practice has come to the master's attention, it is his duty to promulgate such rules as will afford all reasonable protection to the imperiled employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*]

4. MASTER AND SERVANT (§ 286*)—FAILURE TO PROVIDE SAFE PLACE TO WORK—NEGLIGENCE—QUESTION FOR JURY.

Where, in an employé's action for injuries due to the sudden backlashing of a cable on the slipping of a railroad car down grade, there was evidence that the accident and the employé's danger could have been foreseen by ordinary care on the part of defendant, the question whether his failure to promulgate such rules as would have prevented the accident constituted negligence was for the jury, though there was no proof that any such rule was in force in other concerns likewise engaged, and no particular rule was suggested as being required.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§§ 101, 102*)—DUTY OF MASTER—CARE REQUIRED.

It is a master's duty to use reasonable care to so conduct his business as not to subject his servants to unnecessary danger in their work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

Appeal from Trial Term, Erie County.

Action by Paul Nowak against the Delaney Forge & Iron Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

W. H. Corcoran, of Buffalo, for appellant.

L. H. Vogel, of Buffalo, for respondent.

LAMBERT, J.   Defendant is engaged in a manufacturing business at Buffalo.   Plaintiff was injured while in its employ and brings this action to recover for such injuries.   The facts involved are as follows:

The business of the defendant required the moving about its yard of railroad cars, and on the occasion in question it was necessary to bring a car up a slight grade toward and into the building of defendant.   The movement was accomplished, as it had been customarily, by a steel cable, passed from the car and around a revolving drum or niggerhead, located within the shop building.   The cable was given four or five turns around such drum, and a man stationed thereat, by hauling the loose end of the cable taut, was enabled to move the car, through the friction developed by the revolving drum upon the cable.   The forward movement of the car could be stopped by merely loosening the free end of the cable.   As the car moved forward, the slack of the cable was taken up by the man at the drum and passed by him to a man standing in his rear and by this second employé coiled upon the floor.   By the arrangement of these various appliances, the man at the drum was compelled to stand between the tight cable leading to the car, and the slack cable being passed by him to his assistant to be coiled.

The drum had a flange upon but one end, and the custom prevailed that when the car had reached its allotted position the man at the drum was notified by signal and immediately stopped its forward progress by loosening the free end of the cable, thus leaving the drum to revolve freely, within the loosened turns of the cable about it.   It was then his duty to slide all the turns of the cable off the end of the drum. The cable was nearly an inch thick, and its weight was such that its removal from the drum necessitated its deposit upon the floor at the feet of the man operating the drum.   Such operations had been carried on in this manner for some years, and with the full knowledge and acquiescence of the defendant.

Upon the occasion of the accident, plaintiff was assigned the position at the drum, to assist in placing a car.   From his station thereat he could not see the car being moved.   He had operated this appliance theretofore upon a few occasions, and he had no instructions, other than as above indicated.

The car in question was moved to its allotted place and plaintiff was given the signal to stop.   He then loosed the cable and slipped its coils off the drum to the floor at his feet.   Meanwhile, other employés, outside the building, had endeavored to retain such car in its position, by placing blocks of wood under its wheels, to prevent it returning back down the grade.   This custom of maintaining cars in their allotted positions had been followed for several years.   No particular blocks were provided, but the employés took such, for their purposes, as they could find about the works.   Upon this occasion the weight of the car cut two such blocks in two and the car started back down the grade.   The

cable not having been detached from it, its progress caused the cable, at the drum, to coil and twist about the floor, where plaintiff was standing, with the result that one of such coils became wound about plaintiff's leg, and the weight of the car severed his leg above the ankle.

Defendant has had a judgment of nonsuit, solely upon the ground that there has been a complete failure to establish the negligence of the defendant. From such judgment this appeal is taken.

[1] Upon this appeal, every permissible inference is to be resolved in favor of the plaintiff, and our inquiry is limited to the question passed upon by the court below, i. e., the negligence of the defendant.

The action is at common law, although the Labor Law is pleaded and was urged as a ground for recovery and here for reversal. But it is our opinion that the Labor Law has no application to the facts involved. Of the other charges of negligence made, two only require mention.

[2] It is urged that the doctrine of safe place (so called) has application. That is, that the defendant failed and neglected to provide a reasonably safe place for the plaintiff to perform his work. We cannot agree with such contention, as that doctrine is commonly understood. There is no suggestion of any defect in the appliances provided, nor is there proof that they were not proper appliances for the work to be performed by him. Neither is there any evidence that the doing of the work of drawing up the car, with these appliances, involved any element of danger to plaintiff; at least, there is no evidence of such, in connection with this particular accident. The operation involved danger, and plaintiff received his injury solely by reason of the failure to keep the car in its position to which it had been drawn. It was not the pulling of the car up the grade that caused the injury. It was its return downwards and the attendant backlash of the cable. With the car held, where placed, the accident could not have happened. It cannot be said, then, that this was an unsafe place for the plaintiff to work.

[3] The other theory advanced is that of lack of rules governing the operations of the men engaged in holding the car in its position. In its ultimate analysis, this theory grades into that of the safety of the place, to some extent, as will be seen.

The necessity for rules governing the operations of one employé, when his work affects another's safety, has been stated to arise when, with all proper and sufficient appliances at hand, a method of doing the work has developed, which unnecessarily imperils the safety of others, properly engaged in the performance of their duties, and such dangerous practice has come to the attention of the master. It then becomes his duty to protect such imperiled employés by the promulgation and enforcement of rules and regulations such as will afford to them all the protection possible from reasonable effort of the master, in such particulars. Doing v. N. Y., O. & W. Ry. Co., 151 N. Y. 579, 45 N. E. 1028; Dowd v. O. & W. R. R. Co., 170 N. Y. 459, 63 N. E. 541; O'Brien v. D. F. Co., 183 N. Y. 317, 76 N. E. 161; Greif v. B. L. & R. Ry. Co., 205 N. Y. 239–251, 98 N. E. 462.

[4] The cars involved were ordinary railroad cars, equipped with

brakes. Yet the insecure and inefficient practice of blocking them with pieces of wood, selected by the employés, seems to have been uniformly adopted, in preference to the more obviously safe means of setting the brakes. This custom was well known to the master, and no attempt is shown to remedy it. The inference is also clearly permissible that there was no rule in force regulating this practice. There is no proof, however of any rule in force by other concerns, likewise engaged; nor was any particular rule suggested as being required. Under such circumstances, there would ordinarily be presented no question for a jury. But there is a class of cases where, even without such proof, a jury may be left to infer the necessity of such a rule and to determine in that connection what rule was required. Those are the instances where the situation presented is so obviously dangerous as to, in and of itself, suggest the necessity for such a regulation to an ordinarily prudent master. That class of cases is illustrated by Banchetti v. Gorsline Co., 152 App. Div. 275, 136 N. Y. Supp. 589, decided by this court. See, also, Van Alstine v. Standard L. H. & P. Co., 128 App. Div. 58, 112 N. Y. Supp. 416.

The sudden backlashing of this cable, attendant upon the sudden slipping of the car back down the grade, was a result to be foreseen by the exercise of ordinary care, and the attendant danger to the operator at the drum, with the cable coiled around his feet and limbs, followed with equal certainty; at least, the jury might well have so found. The failure of the blocking to hold the car was not of infrequent occurrence, and yet this practice had been continued for years. It would appear to us that this is clearly a case where the jury should have been permitted to determine the necessity for a rule and what rule was required. Until the master had used reasonable diligence to correct this dangerous practice, it cannot be said that it had discharged its full duty to plaintiff. The jury might well have found that the countenance of such practice left the plaintiff surrounded with dangers beyond his control, perfectly obvious and easily preventable.

[5] As was said by the court in O'Brien v. D. F. Co., supra:

"It is the duty of the master to use reasonable care to so conduct his business as not to subject servants to unnecessary danger in the prosecution of their work."

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment and order reversed, and a new trial granted, with costs to appellant to abide the event. All concur.